E. F. MYERS v. BESSIE STEWART.

157 So. 499.
Division B.
Opinion Filed November 7, 1934.

*Thomas Hamilton,* for Plaintiff in Error;

*E. W. & R. C. Davis,* for Defendant in Error.

PER CURIAM.—There is no material difference between this case and that of Edward William James Ward v. Lela Cannon, joined by her husband, S. B. Cannon, in which opinion was filed at this Term of the Court.

The record shows that E. F. Myers was the father of Foster Myers; that Foster Myers is ten years of age; that the boy's mother died fourteen days after his birth and that the father, E. F. Myers, the Petitioner here, gave the child into the custody of its grandmother. The grandmother lived only five years thereafter and after the death of the grandmother the father delivered the child to Bessie Stewart, who was the sister of the child's mother, and joined in a petition filed in the County Judge's Court to have Bessie

Stewart appointed Guardian of the person and estate of the said minor child. Letters of Guardianship were issued to Bessie Stewart appointing her Guardian of the *person* and estate of the minor. Those Letters of Guardianship have not been cancelled or revoked. Therefore, on the record Bessie Stewart has the legal custody and control of the child and the proceedings resulting in the creation of such Guardianship have not been questioned.

It is too well settled to require the citation of authorities that the validity of an order and appointment of this character cannot be collaterally attacked in habeas corpus proceeedings.

The record further shows that E. F. Myers has remarried. The record shows that the child is happy, contented and well cared for where he is. Whether or not he would be happy, contented and well cared for when required to live in the home with his stepmother is, to say the least, problematical. The child appeared in court and expressed the desire to remain in the custody of his aunt. The welfare of the child is always the first consideration which should influence the courts in cases of this kind, while it is not always controlling.

The record further shows that the father has contributed somewhat to the support of the child and there is no reason why he cannot or should not continue to do this while the child continues to live with his aunt.

The order of the court in this case awarded the custody of the child to the aunt and the regularly appointed Guardian, but the order provided that the father should have the custody of the child during seven weeks of vacation each and every summer and one week during each and every Christmas vacation. The order further specifically retained jurisdiction of the case for the purpose of making such fur-

ther orders as the exigencies of the case may require. So the order was without error and should be affirmed.

It is so ordered.

Affirmed.

WHITFIELD, P. J., and BROWN and BUFORD, J. J., concur.

ELLIS and TERRELL, J. J., concur in the opinion and judgment.

DAVIS, C. J., dissents.

DAVIS, C. J. (dissenting).—My view is that the natural father and the natural mother of a child have a superior legal right to the custody of their children, which they can assert at any time unless that right has been cut off by means of an adoption proceding. Section 5884 C. G. L., Chapter 8478, Acts 1921, Laws of Florida.

A proceeding in *habeas corpus* to determine and award the custody of a child to his natural parents is not an unauthorized collateral attack on statutory guardianship proceedings, because *habeas corpus* has always been recognized as the proper remedy to dispose of the custody of children in conformity with law. The writ of *habeas corpus* has been upheld in this State as an appropriate procedure to restore to its parents a child judicially committed to the guardianship of an institution because of the unfitness of its parents to care for it, on a showing of removal of the cause of commitment. See Hancock v. Dupree, 100 Fla. 617, 129 Sou. Rep. 822, and numerous previously decided Florida cases referred to therein.

And in State, *ex rel.* Airston v. Bollinger, 88 Fla. 123, 101 Sou. Rep. 282, this Court said that on *habeas corpus* the courts would void an express agreement made by a father surrendering his child to another, when the father has elected to revoke such agreement, and petitioned the courts to give him back his child.

The doctrine that the welfare of the child is a principal, if not paramount, consideration in such matters as are involved in a child custody proceeding must be applied by the courts in the light of what was said by this tribunal in the recent case of Frazier v. Frazier, 109 Fla. 164, 147 Sou. Rep. 464. In that case it was emphasized that the parental rights of the father growing out of the father's legal responsibility, as well as moral obligation to care for his child, should, even as against the mother of the child, be accorded due consideration by the courts when other considerations do not materially *preponderate* against the father's interest in favor of the child's welfare as a superior consideration *in case the two considerations are in conflict.*

In this country, unlike in Russia, children have not been nationalized on the theory that the state is more competent to be their guardians than are their parents under normal circumstances. Therefore I cannot agree that the sublime relation of parent and child is at any time subject to dissolution by reason of any supposed discretion vested in any department of the government, judicial or otherwise, where there is no showing of legal inability or incompetency on the part of the natural parents to have and exercise the custody of their children. Certainly a man should not forfeit his children's safety, love and companionship on any less clear showing than he would be held to have forfeited his horse or dog.