STATE, *ex rel.* ANDREW R. WATLAND, v. MYRTLE K. HURLEY

188 So. 771.
Opinion Filed November 29, 1938.
On Rehearing April 29, 1939.

490

*Erle B. Askew, Frank M. Harris, B. K. Roberts* and *Oscar T. Ronken* (Rochester, Minn.) for Relator;

*J. Velma Keen, Bussey, Mann & Barton, O. M. Bowen* and *Burton G. Henson,* for Respondent.

TERRELL, C. J.—In October, 1937, this cause was instituted by writ of habeas corpus directed to Myrtle K. Hurley commanding her to show cause why she detained and restrained of their liberty Frances Kathryn Watland and Bernice Loreen Watland, minor children of Andrew R. Watland. The writ was made returnable to Honorable John U. Bird, Judge of the Sixth Judicial Circuit. Myrtle K. Hurley moved to quash, recall, or dismiss the proceeding.

At the time the writ was granted, there was pending on appeal in this court the case of Andrew R. Watland, v. Myrtle K. Hurley, involving the custody of said minor children. In this situation, we continued the hearing on the motion to quash and both cases were heard and considered at the same time. The judgment below was affirmed in Watland v. Hurley, *supra,* and is reported in 133 Fla. 317, 183 So. 255. In the habeas corpus case, we treated the motion to recall, quash, or dismiss as a return to the writ and appointed Honorable John U. Bird, as a Commissioner to take testimony and make report of same to this Court. The report of the testimony by the Commissioner is before us and the question recurs on the final disposition of the cause.

It is first contended that Myrtle K. Hurley was duly appointed guardian of the persons of Frances Kathryn and Bernice Loreen Watland pursuant to Section 5885, Compiled General Laws of 1927, and that such appointment cannot be collaterally attacked by a proceeding in habeas corpus.

Before commencing a discussion of this question, it is

fitting to state that Frances Kathryn Watland was on June 4, 1938, lawfully married to Virgil Sherrill and that while she was at that time only eighteen years of age, her disability of non age was thereby under Section 5883, Compiled General Laws of 1927, removed. This being the case, only the custody of Bernice Loreen Watland is involved in this litigation.

In response to the question posed by Respondent, Relator contends that the order of the probate judge appointing Respondent as guardian of Bernice Loreen Watland was irregular, invalid, and nugatory, and is consequently of no force and effect and being so, there can be no objection to attacking it and having it so adjudicated in a proceeding in habeas corpus.

If the record bore out this contention, there might be substance to it but the order complained of is valid on its face. It was shown to have been made on the request of Relator's representative, was in keeping with the terms of the will of Mrs. Watland, and has been in force and effect and so recognized for a number of years. Under such a state of facts, it should not be permitted to be collaterally attacked in a proceeding of this kind. Myers v. Stewart, 117 Fla. 173, 157 So. 499; 29 C. J. pages, 116 and 112.

The second question we are called on to determine is whether or not the scope of the testimony taken and reported by the Commissioner should have been limited to the condition and capacity of Relator to assume the relation of guardianship at the time of the issuance of the writ and the hearing thereon or may it extend to the previous condition of relator?

When the custody of a minor child is involved unquestionably the court may inquire into both the present and past history of the one seeking or being recommended for such guardianship. Inquiry in such cases goes to the moral,

religious, material, and physical condition of the proposed guardian and it becomes the duty of the Court to make diligent search as to all these factors. This being our view, not only the evidence in this case but that taken in Watland v. Hurley, *supra*, is pertinent and may be considered.

It is not disputed that Mr. Watland is a man of good character and amply able in a material way to provide for his family. It is also conclusive that at the present time, his health and habits are good but that for years past, he has been afflicted with manic depressive psychosis which attacks him at irregular intervals and that when he is under such attacks, he is temporarily insane, that he has had repeated attacks of this trouble, that he was a successful business man but has retired on account of this condition and may have a recurrence of it at any time.

It is further shown that Bernice Loreen Watland is a girl now fourteen years of age, that she was adopted by Mr. and Mrs. Watland when she was an infant, that Mrs. Watland died in December, 1934, since which she has been in the custody of and under the legal guardianship of Myrtle K. Hurley.

It is also shown that Myrtle K. Hurley is a mature woman of fine character, was the trusted friend and confidant of Mrs. Watland, that she had lived in the Watland home for many years before Mrs. Watland's death, that she had worked for Mr. and Mrs. Watland many years when they were in business in Texas, and that she gave up a responsible position to accept the guardianship of the Watland children. All these facts are more generally detailed in Watland v. Hurley, *supra*.

Mrs. Watland had a large estate in her own right; she had known and lived with both Mr. Watland and Myrtle K. Hurley for many years, yet when she came to die, she made it known in her will that she desired Myrtle K. Hurley to be

appointed one of the trustees of her estate and to be the guardian of her children and Mr. Watland through his representative saw that this bequest was carried out. We have known fathers at times to forget, become indifferent to and even to disinherit their children but we have yet to see the first mother who would deliberately dispose of them unwisely or who would not pursue them to the gutter and sacrifice life to retrieve them. Mrs Watland is shown to have been a lady of very fine character, the welfare of whose children was her first consideration. Her last request in this is being carried out and we see no reason to overthrow it.

In a controversy such as this, the best interest of Bernice Loreen Watland rises above any claim of her foster father or Myrtle K. Hurley to her custody. She testified that Miss Hurley had been good to her, that she loved Miss Hurley and preferred living with her to living with her father and being a girl child of tender years under the facts shown here, Miss Hurley was much better qualified to be her guardian. She is possessed of a home and facilities to take care of her, has known her from infancy, is interested in her well being, and has contributed more to her upbringing than any living person.

In the very nature of things, Mr. Watland cannot give to Bernice Loreen Watland the virtues and womanly qualities that Miss Hurley can. Whatever she has of fine character and exalted quality has been contributed by her mother and Miss Hurley. True, Mr. Watland has not been derelict in providing food and clothing but clothes on the back and food in the stomach are a very small part of a child's upbringing. If Mr. Watland contributed more, the record does not so disclose. He was no doubt a great business executive but in both cases, his natural child and his adopted child (the one involved here) have expressed a preference to live with Re-

spondent, their guardian, in preference to their father. We have no assurance that a change would be for the best and it may make for the worst, a condition that is at present shown to be working well. In Bourn v. Hinsey, decided October 18, 1938, and having many parallels to this case, we refused to disturb the guardianship of the foster parents for reasons similar to those involved here.

We do not conceive it to the best interest of a fourteen year old girl to disturb its guardianship that was provided in accordance with its mother's will when it is shown that the guardian is a lady of exemplary character, has been the constant companion of the ward all her life, has been her legal guardian for four years, when it is shown that there is mutual love and affection passing from guardian to ward and from ward to guardian when the ward prefers her present status and to make the change sought subjects her to the hazard of the return of Relator's old trouble in the event of which she would be placed in charge of no telling who. The life of an adolescent child is too precious to take a chance of this kind with it.

In fine, the writ here proposes to destroy a guardianship four years old that was preceded by a companionship from infancy equal in many respects to guardianship and was in response to the mother's will. So intimate has the relation grown from this association that the ward, a girl of fourteen has twice in different cases avowed her preference to live with her guardian over the petitioner, her foster father. It is proposed to destroy a home life that is happy and well apportioned and subject the ward to one that does not in fact exits and may never exist. It is proposed to place the ward in the custody of the adoptive father who has four times been stricken with manic depressive psychosis and subject at any time to a return thereof. It is idle to talk about the financial ability of the petitioner to care for the

ward because the record discloses that the guardian, from the estate of the child's mother provided for that purpose, is equally as able and much more likely to continue so. The ward is no blood relation whatever to petitioner, she is a girl of tender years and wants to remain where she is and he is in the world alone without any vestige of a family to make a home for or to help him make a home for the ward.

The motion to quash is therefore granted but with directions to permit Relator to visit Bernice Loreen Watland and to have her custody at such times and under such restrictions as the Chancellor may deem proper to impose. The record discloses that the foster father has always had the privilege of visiting the ward and has in fact lived with her and Miss Hurley part of the time.

It is so ordered.

WHITFIELD, and BROWN, J. J., concur.

BUFORD and CHAPMAN, J. J., dissent.

BUFORD, J., (dissenting)—I think the record shows beyond any question that Andrew R. Watland is in all respects a proper person to have the custody and control of his adopted daughter Bernice Loreen Watland, and that he is in position to provide for her every advantage which could possibly to inure to her by remaining in the custody and control of her legal guardian who acquired that status solely because of a temporary derangement of her foster father.

The foster father's right in the premises is a legal right which the law should protect unless it be shown that he is in some material respect an unfit person to have the custody and control of the child or it be shown that the best interest of the child will be materially jeopardized by the exercise of such right. Neither of these adverse conditions is shown to exist.

The motion to quash should be denied and the custody of the child awarded to the relator.

CHAPMAN, J., concurs.

### ON. PETITION FOR REHEARING

PER CURIAM.—On petition for rehearing, this case was again argued and the record and the briefs have been re-examined. A majority of the Court have reached the conclusion that our opinion and judgment filed November 29, 1938, should be reaffirmed on rehearing.

It is so ordered.

TERRELL, C. J., WHITFIELD, and THOMAS, J. J., concur.

BROWN, J., concurs in the conclusion.

BUFORD and CHAPMAN, J. J., dissent.