## STATE v. SORENSEN et al.

No. 6418.   Decided December 3, 1942.   (132 P. 2d 132.)

See 31 C. J., Infants, sec. 12; 39 Am. Jur., 614.

*Grover A. Giles,* Atty. Gen., and *Cline, Wilson & Cline,* of Milford, for appellants.

*N. J. Bates,* of Richfield, for respondents.

*Cline, Wilson & Cline,* of Milford, for cross-appellants.

McDONOUGH, Justice.

This is an appeal from the Juvenile Court of the Sixth Juvenile District in and for Sevier County. Appellant is the natural father of Maxine Jensen, a minor, who is the subject of this action. Cross-appellants are the paternal grandparents of the minor child, and the Sorensens, respondents herein, are the maternal grandparents of said child.

The controversy involves the rights of the respective parties to the custody of Maxine Jensen. The decision of the juvenile court awarded until a future date the sole custody of the child to its maternal grandparents, the Sorensens.

The record reveals that in June, 1940, the Sorensens filed a complaint in the Juvenile Court with respect to their grandchild, Maxine, alleging:

"that the mother of the said child is deceased and the father of said child has knowingly failed and neglected to provide for such child the proper maintenance, care, training, education contemplated and required by both law and morals in this that the said father has kept this little child in the coal camp at Red Creek, Sevier County, Utah, and has lived in an unwholesome environment by drinking, carousing, cursing and swearing in the presence of said child. All of which are detrimental to the physical and moral welfare of the said child."

All the parties here involved were present at the hearing had on said complaint. At that time, appellant, Fern Jensen, Maxine's father, admitted the charges contained in the complaint against him and agreed that custody of the minor child might be given to its grandparents, on both sides, as the court should determine.

The court made findings and conclusions to the effect that the allegations of the complaint were, in substance, true, and entered its judgment and decree as follows:

"It is ordered, adjudged and decreed by the Court that Fern Jensen and Audrey Jensen (step-mother), the parents, guardian, custodian of said child be and they are hereby deprived of the custody of said child.

"It is further ordered, by the Court that said Maxine Jensen be and she is hereby declared and adjudged to be dependent, neglected child within the meaning of the laws of Utah, in such cases made and provided, and that subject to the continuing jurisdiction of the Court the said: Maxine Jensen be and is hereby made a ward of the Juvenile Court and as such she be and is hereby placed in the custody of her maternal and paternal grandparents, to wit: from June 1st to September 1st this child is to live in the home of Mr. and Mrs. Andrew M. Sorensen of Emery, Emery County, Utah and from September 1st to June 1st of each year in the home of Mr. and Mrs. Anton Jensen of Salina, Sevier County, Utah, under the continuing jurisdiction of the Juvenile Court and subject to changes in the order as time goes by."

Pursuant to such decree the child lived with the elder Jensens during the winter months of 1940-1941 and with

the Sorensens during the summer 1941. In the meantime, Fern Jensen and his wife moved to Beaver, Utah, where they established residence. In July, 1941, Fern Jensen filed a petition in the Juvenile Court alleging that the conditions found by the Juvenile Court to be existing when it found Maxine Jensen to be a "neglected child" and entered its order granting custody to the grandparents "have changed in a material and substantial manner." The petition then sets out in what manner the conditions have changed, including the personal habits of the petitioner as well as the facilities for caring and providing for the child, and strong affection both petitioner and his wife had toward her. After alleging the above, together with an allegation that it would be for the best interests of the child to be returned to its father, the petition prays that the court "revoke its former said order   *   *   *   and enter its order dismissing the juvenile proceedings heretofore instituted."

A hearing was had on the above petition after which the court made its decision to the effect (1) that the minor child should remain in the custody of the Sorensens with whom it was then staying; and (2) that Fern Jensen not having satisfied the court that he had "completely absolved himself from disability denying him said custody in the first instance," the court would retain jurisdiction of the matter, and

"in the event said petitioner, Fern Jensen, deports himself becomingly between the date hereof and June 1, 1942, then and in that event said petitioner, Fern Jensen, shall have and enjoy the sole custody of said minor child thereafter so long as said petitioner maintains a home in a suitable atmosphere to rear a child of the age and temperament of the child here in question; upon the failure on the part of Petitioner, Fern Jensen, the Court will again deprive the petitioner of custody and place the child elsewhere."

Appellant, Fern Jensen, complains of the second part of the decision while the elder Jensens cross-appeal as to the first part of the decision. While arguing that their son should be entitled to the custody of his minor child, cross-

appellants urge that if the second part of the Juvenile Court's decision be sustained, then the first part should be reversed since it modified the prior ruling of the court without having any evidence to support such modification.

Considering first the right of appellant to the custody of his minor daughter, we find that appellant relies upon several well-recognized principles to support his claim:

(1) "The legal presumption is that it is for the best interests of the child and of society for the child to remain with its natural parents during the period of its minority and be maintained, cared for, and educated by them and under their supervision and direction." *Hummel* v. *Parrish*, 43 Utah 373, 134 P. 898, 901. (2) "Where the parent is morally a fit person to have the care and custody of his own offspring, his rights are paramount to the rights of all others." *Alley* v. *Alley*, 67 Utah 316, 247 P. 301, 304. (3) "Then, too, the unfitness which deprives a parent of the right to the custody of the child must be positive and not merely comparative, or merely speculative." *Cooke* v. *Cooke*, 67 Utah 371, 439, 248 P. 83, 108.

The above principles, however, are not applicable in the present situation. The quotation above from Hummel v. Parrish is immediately followed by a qualification which has some application to the facts in the instant case:

"But this [right of custody] is not an absolute right of the parent. The decisions rendered in this class of cases almost universally hold that where, as here, a parent has surrendered the control of his child when it was a toddling infant to other parties, and permitted them to maintain, clothe, feed, and care for it until it is eight or nine years of age, and a strong reciprocal mutual affection has grown up between the child and its foster parents, as in the case at bar, *and the parent seeks to recover possession of the child, the natural or presumptive right of the parent cannot prevail if the interests and welfare of the child forbid it*. The law in such cases regards the welfare and permanent interests of the child much more important than the natural or presumptive right of the parent. In other words, the paramount consideration in such cases is the well-being of the child. If it appears to the court that the physical, intellectual, social, moral, and educational training and general welfare and happiness of the child will be best promoted by leaving it with the foster parents, the presumptive right of the natural parent must yield to the interests of the child."

This rule was closely followed in *Wallick* v. *Vance*, 76 Utah 209, 289 P. 103, 110, where the court after quoting the above with approval held:

"So, in the instant case, the defendant having by his gift or agreement and his subsequent conduct lost and foreited the legal and preferential rights as the parent to the custody of his child, but now desires to reclaim its control and custody, the best interests of the child become the controlling and determining principle in the case."

In *Alley* v. *Alley* supra, the trial court in a divorce proceeding had granted custody of the child to the grandparents "until the further order of this court." In a subsequent proceeding by the father to obtain custody of the child, it was held on appeal:

"In every case where the welfare of a child of tender age is in question, the courts should exercise great care to subserve the best interests of such child, and *in determining the question of custody and control should, if possible, always maintain control of the child and retain it within the jurisdiction of the court so as to protect it against harmful influences and to preserve its welfare and the rights of all interested parties.*" (Italics added.) See, also, *Harrison* v. *Harker*, 44 Utah 541, 142 P. 716; *Jones* v. *Moore*, 61 Utah 383, 213 P. 191; *Jensen* v. *Earley*, 63 Utah 604, 228 P. 217; *Ex parte Flora*, 84 Utah 143, 29 P. 2d 498.

In each of these cases the parent was attempting to *regain* possession and custody of the minor child. And in each case there was the question of whether such parent had previously lost the right to have the custody of such child although presently a morally fit person to care for the same.

So it is in the instant case, although here the fact is that at the time the petition was filed by appellant seeking to obtain custody of his minor daughter, he was, *by court decision*, rendered more than a year prior thereto, under a disability, having been found not to be "a fit and proper person to have the custody of said minor child." And this disability was recognized by petitioner for the petition alleges certain family conditions and changes in conduct

which, it was urged, merited modification of the prior decision and restoration of custody to the father.

A somewhat similar situation was involved in the case of *Hamann* v. *Miesner,* 148 Okl. 50, 297 P. 252. The syllabus by the court in that case reads:

> "A judgment and decree of the trial court, made three years ago, awarding the custody of a child to the mother's parents, who were adjudged to be fit persons to have the care and custody of said child, being then only two years of age, will not be reversed now and the custody be awarded to the father; this court being without knowledge as to what changes have since taken place and having no knowledge as to what conditions exist at this time. Such decree will be allowed to stand subject to such modifications as present conditions and the child's welfare may require.

It thus appears that where an order of the court has been made awarding custody of a minor child to a particular individual such order will not thereafter be modified without a showing of a change of conditions or circumstances meriting such modification. See also *Myers* v. *Stewart,* 117 Fla. 173, 157 So. 499; *Ward* v. *Cannon,* 117 Fla. 139, 157 So. 335; *Ex parte Day,* 189 Wash. 368, 65 P. 2d 1049. To the same effect where an order of the court in a divorce proceeding is concerned is *Barraclough* v. *Barraclough,* 100 Utah 196, 111 P. 2d 792.

Did appellant make such a showing as required the lower court to award him the custody of his minor daughter? The writer doubts that the evidence adduced at the hearing which was adverse to appellant was such as to justify a refusal to so order. However, in view of such testimony, we cannot say that the court abused its discretion in requiring appellant to conduct himself "becomingly" for a period of ten months before such custody would be given, in view of the previous finding of appellant's unfitness. However, in reaching such conclusion, we interpret the court's order to mean that unless during the probationary period appellant so conducts himself as to indicate an unfitness to have the custody of his daughter, he shall at

the end thereof be awarded such custody "so long as said petitioner maintains a home in a suitable atmosphere to rear a child of the age and temperament of the child here in question; upon the failure on the part of the petitioner, Fern Jensen, the court will again deprive the petitioner of custody and place the child elsewhere."

Finally, as to the modification by the court of its former order awarding custody to the elder Jensens from September 1st to June 1st of each year and to the Sorensens from June 1st to September 1st of each year. The modification awarding custody solely to the Sorensens ■ (until the end of appellant's probationary period) was wholly without evidence to support it. In view of the authorities cited above to the effect that a change of conditions or circumstances must be proved to justify a modification, and our holding to that effect, it was error for the court to deprive the elder Jensens of the custody of the child for the time they had previously been granted such custody. Therefore, the order of the lower court as to the custody of the child Maxine Jensen until the time specified when appellant may, upon the conditions made, have such custody must be set aside and the prior order of custody to the elder Jensens from September 1st to June 1st be reinstated.

The cause is accordingly remanded with instructions to the Juvenile Court to modify its order according to the views herein expressed. In view of the decision here reached both appellant and respondents will bear their own costs. Cross-appellants having prevailed, they are entitled to their costs against respondents.

WOLFE and LARSON, JJ., concur.

MOFFAT, Chief Justice.

I concur in the result.

PRATT, J., on leave of absence.