The **PEOPLE** of the State of Colorado In the Interest of A.D., Child, and concerning **Denver Catholic Community Services, Inc.**, Interested Party-Appellee,

and

**H.L. and E.L., Grandparents-Appellants.**

No. 84CA0935.

Colorado Court of Appeals, Div. III.

July 25, 1985.

Rehearing Denied Aug. 29, 1985.

Certiorari Denied Dec. 2, 1985.

Doris E. Burd, Denver, Guardian Ad Litem for Minor Child, A.D.

Green & Josefiak, Philip Burton Green, Denver, for interested party-appellee.

Irvin M. Kent, Aurora, H. Kenneth Johnston, II, P.C., H. Kenneth Johnston, II, Broomfield, for grandparents-appellants.

VAN CISE, Judge.

H.L. and E.L. (the grandparents) appeal the orders denying their motion for custody and guardianship and their petition for adoption of A.D. (the child), following entry of an order of relinquishment by the child's parents, one of whom, J.L., is the son of H.L. and E.L. We affirm.

The child was born in November 1983 to M.D. (the mother) and J.L. (the father), both 18 years old and unmarried. On December 13, they petitioned the juvenile court for relinquishment of the child and for its custody to be awarded to whomever the court should deem fit. Both signed a consent to adoption. On the same day, the paternal grandparents intervened in the relinquishment proceeding, moved for temporary custody and for an order of guardianship, and petitioned for adoption of the child.

At a hearing in January 1984, the court entered an order of relinquishment of the parents' rights to the child. Although acknowledging that they understood that the court was not bound by any request as to placement of the child, both parents requested that the child be placed in an anonymous adoptive home and not be placed with or adopted by the paternal grandparents.

The proceedings were continued for further hearing on the placement issue. In the interim, temporary custody was granted to Denver Catholic Community Services, Inc. (DCCS), the agency to which the parents had gone for relinquishment counseling, which was then caring for the child, and through which they wished to have their child placed for an anonymous adoption.

In May, after a hearing that lasted for several days, the court denied the grandparents' motion for custody and guardianship and, in effect, their petition for adoption. It directed that, in any future hearings concerning placement of the child, the parents and grandparents would not be notified of such hearings nor of any potential or actual placement, and that their consent would not be sought for the placement. In July, the grandparents' motion for stay was denied, and the court ordered that the child may be placed for adoption through DCCS, but that no petition for adoption of the child could be filed or finalized until appeal remedies were exhausted or abandoned.

I.

■ The grandparents contend that the trial court applied erroneous standards of law in making its determination by failing to give controlling weight to the testimony and opinions of a child psychiatrist and of a social worker whose involvement was by court order. We do not agree.

The weight to be accorded expert testimony is within the sound discretion of the trier of fact and will not be disturbed on review in the absence of an abuse of that discretion. *Young v. Burke*, 139 Colo. 305, 338 P.2d 284 (1959). Here, the court considered that testimony, together with all of the other evidence, including the testimony of the parents and the grandparents, and arrived at a different result.

■ The standard for determining guardianship, custody, and placement for adoption is the best interests and welfare of the child. *See* § 19-3-111(4), C.R.S. (1984 Cum.Supp.), § 19-4-112(2)(d), C.R.S. (1978 Repl.Vol. 8); and *In re Petition of J.A.A. v. C.R.*, 618 P.2d 742 (Colo.App. 1980). A request by grandparents that guardianship be placed in them shall be considered by the court, but it is not bound by such request. Section 19-4-103(2), C.R.S. (1978 Repl.Vol. 8). The trial court noted in its July order, and we agree, that:

"While placement with relatives and other persons known to the child and to other interested parties [is] not forbidden under law, anonymous adoptions are pre-

ferred. [Section 19–4–104(2), C.R.S. (1978 Repl.Vol. 8)] states unequivocally, 'In all matters relating to the relinquishment and adoption of children, the court shall act to preserve the anonymity of the natural parents, child, and adoptive parents.' In *Batton v. Massar*, [149 Colo. 404, 369 P.2d 434 (1962)], the Colorado Supreme Court ... stated in reference to adoption proceedings which follow relinquishments, 'In most such cases they never know of the adoption proceedings or who may be the adoptive parents, if any—*wisely so.*'" (emphasis added)

In that same order, the court reasoned in pertinent part as follows:

"Here, the grandparents live in a home still visited by the natural father, a home located only a few miles from the home of the natural mother. The natural mother lives next-door to a family which is very close friends with the grandparents and who testified on behalf of the grandparents at the hearing. Here, the child would be raised in a home where there is active opposition to her placement, opposition coming even from a member of the family. Here, the natural father, even though his parental rights have been terminated, would be able to see the child any time he wanted to—a child whom he fathered and who would now be [his] legal [sister]. Here, the natural mother, who carried the child for nine months but gave the child up for adoption by someone more equipped to raise a child than she would be, would be admittedly jealous of the fact that she could not see the child whereas the natural father could see the child regularly—a situation which the natural mother, not malevolently, believes could tempt her to make efforts to step into the child's life.

"The [grandparents] testified in good faith that they would not allow either their son or the natural mother to interfere with or intervene in the raising of the child. Under the circumstances of this particular case as enumerated above, that intent is easier to express than to effectuate. The strong will of the grandfather is not the panacea of all real life problems; it did not keep the grandparents' marriage from suffering a several month separation a few years ago and did not keep their son, the father of the child, from rebelling against the household rules and moving out while still in high school.

. . . .

"[T]he child in this case is already embroiled in controversy from within the family which seeks to raise her, a combatant atmosphere which is likely to continue into the future and the risk of which makes it ill-advised to determine that such a placement would best serve the interests of the child."

In determining whether a placement is in the best interest of the child, the juvenile court has broad discretion. *In re Petition of O'Neal v. Department of Public Welfare*, 163 Colo. 309, 430 P.2d 476 (1967). That decision will not be disturbed on review when, as here, it is supported by evidence in the record and is not manifestly erroneous. *People in Interest of C.A.K.*, 652 P.2d 603 (Colo.1982).

## II.

■ We also disagree with the grandparents' contention that the trial court erred in accepting testimony concerning the wishes and desires of the relinquishing parents as to placement of the child. In determining what was in the best interests of the child, the court had to consider the problems that could arise in a placement with the grandparents. The concerns of the parents, although not dispositive, were relevant thereto. *See* CRE 401. As stated by the court, it "deemed the natural mother's testimony to be sufficiently important that the court would have called her as a witness in any event pursuant to its authority under CRE 614."

## III.

■ Finally, the grandparents contend that the trial court committed reversible error by allowing the natural mother status as a party to the proceedings on the petition for adoption by the grandparents which was heard and determined after the entry of the final order of relinquishment. Again, we do not agree.

Here, the mother asked, and was granted permission, to be heard at the custody por-

tion of the relinquishment action which she initiated and to present evidence which could substantially affect her interests and the best interests of the child. She could have appeared as a witness even if she did not have party status. And, as noted by the court, "other than her own testimony, the natural mother presented no other evidence to the court and elicited very little evidence during cross-examination of other witnesses that was not already elicited by other parties." If error was committed in giving her party status, it was harmless.

Orders affirmed.

TURSI and BABCOCK, JJ., concur.