**In the Matter of the Petition of M.G., Petitioner–Appellant,**

**for the Adoption of Three Children,**

**and Concerning R.V., Respondent–Appellee,**

**and**

**B.V., Intervenor–Appellee.**

No. 01CA0973.

Colorado Court of Appeals, Div. I.

Sept. 12, 2002.

Certiorari Denied Dec. 16, 2002.

**1146**

Beltz Law Firm, W. Thomas Beltz, Daniel A. West, Colorado Springs, Colorado, for Petitioner–Appellant.

Stephen D. Benson, Colorado Springs, Colorado, for Respondent–Appellee.

Michelle Velasquez Starr, P.C., Michelle Velasquez Starr, Colorado Springs, Colorado, for Intervenor–Appellee.

Opinion by Judge METZGER.

In this consolidated action involving both adoption and dependency and neglect proceedings, petitioner, M.G., appeals the trial court's order denying her petitions to adopt her three grandchildren. She also appeals the trial court's order awarding visitation to intervenor, B.V., the children's paternal grandmother. We affirm.

Respondent, R.V., is the father of the children, and petitioner's daughter was their mother. Respondent murdered petitioner's daughter and is serving a forty-year prison sentence for that crime.

The children were originally placed with petitioner immediately after the murder in December 1997. Following commencement of a dependency and neglect action in January 1998, the parties participated in mediation and reached an agreement that the children would reside with petitioner a majority of the time and intervenor would have extended visitation. Based on that agreement, the court awarded petitioner permanent custody of the children on February 18, 1998. Respondent's parental rights were not terminated.

Petitioner sought to adopt the children after she and intervenor had a disagreement. She also petitioned for a termination of respondent's parental rights with respect to all three children. Respondent moved to dismiss the petitions, citing the prior mediated agreement and claiming that the requested adoption would not be in the children's best interests because it would result in their alienation from his family. Intervenor sought to enforce her right to visitation under both the agreement and the grandparent visitation statute, § 19–1–117, C.R.S.2001, and argued that her right would be extinguished if the adoptions were permitted.

The trial court found that, while the evidence consistently showed that petitioner's home was a "wonderful placement" for the children, it also uniformly attested to the strong bond the children had developed with intervenor and other members of the paternal family. Further, the court found no indication that intervenor had ever done anything to harm the children.

The court also found that, because of the tremendous loss the children had suffered, they needed as much family support as possible and they essentially would be retraumatized if contact with intervenor and the paternal relatives were discontinued. The court also pointed out that the therapists who had testified agreed that the children will need contact with their father to "process the tragedy" they had experienced. Therefore, the court concluded, the "best interests of the children in this case would not be served by terminating the parental rights of [respondent] because if those rights are terminated, then by application of the law, [intervenor] would no longer have her status as 'grandparent' " and consequently would lack any legal basis to seek visitation.

I.

Petitioner first contends the grandparent visitation statute, § 19–1–117, violates the due process clauses of both the United States and Colorado Constitutions. She also argues that the statute is unconstitutional on its face and as applied in this case. We disagree.

A division of this court recently reviewed the facial constitutionality of § 19–1–117 in light of the Supreme Court's decision in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). The division found that § 19–1–117 is not unconstitutional on its face merely because it authorizes visitation rights for grandparents. *In re Custody of C.M.*, —— P.3d ——, 2002 WL 31116773 (Colo.App. No. 00CA2313, Sept. 12, 2002).

The division noted that, unlike the Washington statute found to be deficient in *Troxel*,

§ 19–1–117 uses the best interests standard, limits standing to grandparents, and permits a petition for visitation only if there is or has been a child custody case. The division further relied on *In re Custody of C.C.R.S.*, 892 P.2d 246 (Colo.1995), and explained that the best interests standard must be applied with a presumption that the biological parent has a first and prior right to custody. The division concluded that, because § 19–1–117 is more narrowly drawn than the statute in *Troxel* and can be construed to incorporate the presumption favoring biological parents' wishes inherent in the best interests standard, it satisfies the constitutional requirements discussed in *Troxel*.

However, because the trial court in *C.M.* did not give any special weight to the mother's wishes regarding visitation with the grandmother, the division remanded for reconsideration of the grandmother's petition under the *Troxel* requirements.

■ We adhere to the finding of facial constitutionality in *C.M.* Further, although petitioner has urged that § 19–1–117 is unconstitutional under the Colorado Constitution, she has not alleged that any specific due process requirements under the Colorado Constitution differ from those in the United States Constitution that were discussed in *Troxel*. Thus, we need not separately examine the facial constitutionality of § 19–1–117 under the Colorado Constitution.

■ Petitioner also urges that the presumption favoring biological parents extends to legal guardians and that the trial court here failed to defer to her decisions concerning the intervenor's visitation. She maintains that, therefore, the trial court did not apply § 19–1–117 in a constitutional manner when it awarded visitation to the intervenor. We are not persuaded.

First, nothing in *Troxel* requires a trial court to defer to a custodian's wishes. Second, the status of a custodian differs from that of a biological parent because one standing in loco parentis may elect to be relieved of that status and its attendant obligations. *People in Interest of P.D.*, 41 Colo.App. 109, 580 P.2d 836 (1978).

While we agree with petitioner that a guardian or custodian has the authority to make many decisions on behalf of the child, including the choice of a religion, we do not agree that the Court in *Troxel* held that the fundamental liberty interest in rearing children belongs to guardians as well as to biological parents. In dictum, the Court referred to the holdings in *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), and *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). However, these cases involved constitutional challenges to statutes concerning education; the former required attendance at a public school, and the latter banned the teaching of foreign languages to grade school students. And, while guardians were mentioned along with biological parents when the Court generally discussed the right to rear children and direct their education, the statutes at issue did not require a best interests inquiry or otherwise embody concerns directly and immediately affecting the emotional and physical well-being of a child to the same degree as those involved in custody determinations.

Consequently, we hold that the presumption giving custodial preference to the biological parent need not be accorded to a guardian.

## II.

Petitioner also asserts that § 19–1–117 violates her right to equal protection under the United States Constitution. However, that argument is raised for the first time on appeal, and we will not consider it. *See In re Marriage of Parsons*, 30 P.3d 868 (Colo.App. 2001).

## III.

Finally, we disagree with petitioner's contention that the trial court erred in denying her adoption petitions.

■ The standard for determining custody, guardianship, and adoption is the best interests and welfare of the child. *People Interest of A.D.*, 706 P.2d 7 (Colo.App.1985). The best interests of the child are also the paramount consideration for terminating the

parent-child relationship. *See* § 19–5–105(3.1)(3.2), C.R.S.2001; *In re Custody of C.C.R.S., supra,* 892 P.2d at 258 n. 25.

■ When evidence in the record supports the trial court's findings that it is not in the child's best interests to proceed with adoption, those findings are binding on appeal. *In re Petition of J.A.A.,* 618 P.2d 742 (Colo. App.1980).

■ Here, the trial court correctly observed that intervenor would have no rights to seek visitation under § 19–1–117 if a decree of adoption were entered. *See People in Interest of N.S.,* 821 P.2d 931 (Colo.App. 1991). We need not decide whether that ground alone would be sufficient to prevent adoption here. The evidence was undisputed that the children needed contact with their father at some point, which would have been impossible if his parental rights were terminated. *See* § 19–5–211, C.R.S.2001; *In re Adoption of T.K.J.,* 931 P.2d 488 (Colo.App. 1996). The trial court acted within its discretion in denying the petitions to adopt on those bases.

Although there was some evidence that adoption by petitioner would be in the children's best interests, the experts all agreed, as noted by the trial court, that visitation with intervenor also was in their best interests. Accordingly, denial of the petitions to adopt was consistent with the trial court's resolution of the other issues before it.

We reject petitioner's argument that the goal of permanency planning compels us to reach a contrary result. Petitioner already has permanent custody of the children, and we are satisfied that the level of permanency achieved here is appropriate under the circumstances. Further, the trial court's order clearly provides that petitioner has the final decision-making authority with respect to the children's religious training.

The orders are affirmed.

Judge DAVIDSON and Judge CASEBOLT concur.