WALLACE, Judge.
In this case we are called upon to decide whether the probate court has the power to order the nonparental guardians of the person of a minor ward to permit visitation between the ward and one of his grandparents. We hold that the probate court has the inherent power to order the guardians to permit such visitation. Accordingly, we reverse the order of the probate court that held to the contrary, and we remand this case for the probate court to reconsider, in light of our holding, the grandparent’s petition for visitation with the minor ward. We also decide that the probate court did not err in denying a petition for the appointment of a guardian ad litem in the proceedings below, because the petition for appointment of a guardian ad litem was not presented to the probate court for a ruling until the day scheduled for the final hearing on the visitation petition.
FACTS AND PROCEDURAL HISTORY
T.J.M. (the Ward) was born on May 10, 1999. Although both of the Ward’s parents are living, neither of them is involved in the care and custody of the Ward. In September 2003, with the parents’ consent, the probate court established a guardianship of the person and property of the Ward. The probate court appointed the Ward’s maternal grandparents, R.E.T. and S.L.T. (the Guardians of the Person), as the guardians of the person of the Ward. The probate court also appointed K.A.S. (the Guardian of the Property) as the guardian of the property of the Ward.
G.M. (the Grandmother) is the Ward’s paternal grandmother. The Ward’s paternal grandfather is deceased. For reasons not material to our decision, the Guardians of the Person refused to permit the Grandmother to visit with the Ward. In February 2004, the Guardian of the Property filed a petition for interim judicial review in accordance with section 744.3715, Florida Statutes (2003), and Florida Probate Rule 5.705. In her petition, the Guardian of the Property asked the probate court “to review the actions of the Guardians of the Person and to order [them] to act in the long-term best interest of the ... Ward” by allowing “frequent and regular visits with the ... [GJrandmother.” The Grandmother promptly joined in this petition.
The Guardian of the Property subsequently petitioned for the appointment of a guardian ad litem for the Ward in accordance with section 744.391 and rule 5.120. In her petition, the Guardian of the Property alleged that the interests of the Guardians of the Person concerning the subject matter of the petition for interim judicial review were adverse to the interests of the Ward. The Guardian of the Property did not present her petition for *1059 the appointment of a guardian ad litem to the probate court for a ruling until the day scheduled for the final hearing on the petition for interim judicial review.
THE PROBATE COURT’S RULING
After an evidentiary hearing, the probate court denied the petition for interim judicial review and declined to order the Guardians of the Person to permit the Grandmother to visit the Ward. In pertinent part, the probate court found as follows:
2.... Testimony developed at hearing shows that [the Grandmother] has joined in this petition for interim judicial review in order to assert her rights to' grandparent visitation with the [W]ard. This Court does not believe that [the Grandmother] has a “right” to grandparent visitation with the [W]ard. See Sullivan v. Sapp, 866 So.2d 28 (Fla.2004).
3. Counsel for [the Grandmother] also asserts that the [W]ard, pursuant to § 744.3215(l)(m), Fla. Stat. (2003)[,] retains the right to receive visitors and communicate with others. This Court finds that this maybe [sic] true with an adult ward, but the ward in question here is a minor and therefore is incapacitated by reason of nonage as well as being incapacitated by reason of having both a guardian of his person and property. Therefore, by reason of nonage the guardian of his person would have the exclusive right and obligation to determine what visitors and/or communications the [W]ard could receive.
4. The Court finds that [the] Guardians of the Person of the Ward[ ] have not acted unreasonably in limiting the contact of the [W]ard with the [Grandmother].
The probate court also denied the petition for appointment of a guardian ad litem for the Ward. The Guardian of the Property and the Grandmother have appealed the trial court’s order denying the petition for interim judicial review and the petition for appointment of a guardian ad litem.[1]
THE PETITION FOR INTERIM JUDICIAL REVIEW
A. A Preliminary Note on Standing
As an initial matter, we doubt that a guardian of the property of a minor ward has standing to petition the probate court for an order directing the guardian of the minor’s person to permit a third party to visit the minor. The parties did not address this issue in their briefs or at oral argument, and they have not directed us to any authority on this point. However, the Grandmother undoubtedly has standing to request visitation with the Ward. The Grandmother not only joined in the petition for interim judicial review, she was also a full participant in the proceedings in the probate court. Therefore, we do not need to reach the issue of whether the Guardian of the Property had the requisite standing to file the petition for interim judicial review.
*1060 B. The Issue
The probate court ruled that the Grandmother has no “right” to visitation with the Ward and that the Guardians of the Person “have the exclusive right and obligation” to determine what visitors the Ward can receive. These rulings are questions of law that we review de novo. See Blanton v. City of Pinellas Park, 887 So.2d 1224, 1226 (Fla.2004). However, we conclude that the probate court misconceived the issue before it as turning on the respective “rights” of the parties. Granted, the guardian of the person of a minor can determine what persons may have access to and visit with the minor.[2] See generally 39 C.J.S. Guardian and Ward § 54 (2003). As we see it, the issue before us is whether the probate court has the power to act in the best interests of the Ward to control the discretion exercised by the Guardians of the Person in determining what persons will be permitted to visit the Ward. We begin our examination of this question by considering the only Florida case that touches on the power of the probate court to control the exercise of the guardian’s discretion concerning what persons may visit a minor ward.
C. The Probate Court’s Power to Control Visitation with a Minor Ward.
1. The Florida Authority: State ex rel. Watland v. Hurley
State ex rel. Watland v. Hurley, 137 Fla. 488, 188 So. 771 (1938), was an original proceeding on a writ of habeas corpus filed in the Supreme Court of Florida. Id. at 772. In Watland, a father sought to regain custody of his two daughters from their court-appointed guardian. The father suffered from recurring bouts of “manic depressive psychosis.” When the children’s mother died, the father was disabled by his illness, and he was unable to care for his daughters. The trial court had appointed the person named in the mother’s will as guardian for the two girls. The father brought the proceeding after he had recovered — at least temporarily— from his illness. Id. at 773. One of the daughters became emancipated during the course of the litigation, and the case proceeded as to the remaining daughter. Id. at 772.
Our supreme court declined to disturb the guardian’s custody of the remaining daughter, and it granted the guardian’s motion to quash the writ. Id. at 774. However, the supreme court also directed the trial court to permit the father to visit his daughter and “to have her custody at such times and under such restrictions as the Chancellor may deem proper to impose.” Id. It does not appear from the court’s opinion that the parties litigated the issue of visitation. The court noted in its opinion that the “father has always had the privilege of visiting the ward and has in fact lived with her and [the guardian] part of the time.” Id. Still, Watland may be read as an implicit recognition of the power of the circuit courts of this state to control the exercise of a guardian’s discretion concerning what persons may be permitted to visit a minor ward.
2. Cases from Other Jurisdictions
Courts from other jurisdictions that have directly confronted the issue before us have held that a guardianship court may direct a guardian to permit grandparents and other persons to visit a minor ward if the best interests of the minor will be promoted by such visitation. See, e.g., *1061 In re Reynolds’ Guardianship, 60 Cal.App.2d 669, 141 P.2d 498 (1943); In re Guardianship of Ankeney, 360 N.W.2d 733 (Iowa 1985); In re Lippincott, 96 N.J.Eq. 260, 124 A. 532 (1924); Szuhay v. Zahoransky (In re Zahoransky), 22 Ohio App.3d 75, 488 N.E.2d 944 (1985). The decision in the Reynolds case is a representative example of these cases. In Reynolds, the trial court had appointed the minor’s paternal grandfather as his guardian. 141 P.2d at 499. Later, the trial court entered an order giving the minor’s maternal grandparents the right to visit the minor in accordance with a specific schedule. Id. The guardian appealed the visitation order and challenged it on various grounds. In pertinent part, the guardian claimed that the trial court’s order “usurped and encroached upon his rights as guardian in his relation to the ward.” Id. The guardian also contended that after the entry of the original order appointing him as guardian, the trial court lacked the authority to modify or impose conditions concerning the conduct of the guardianship different from those established in the original order. Id.
The California appellate court rejected the guardian’s arguments and affirmed the trial court’s order for visitation by the maternal grandparents. The court began its analysis by noting that California’s probate courts occupy the same position as the English court of chancery and recalling Blackstone’s description of that court as “the supreme guardian and [having] superintendent jurisdiction over all of the infants of the Kingdom.” Id. at 500.[3] Based on these first principles, the court concluded that the guardian operated as an arm of the court and was subject to its control in the discharge of his duties in the interest and welfare of the child. Id. at 501. Concerning the guardian’s argument that the trial court could not modify or add to the conditions of the original order of appointment, the appellate court said:
If circumstances subsequent to the original order make it desirable and conducive to the comfort and well-being of the child that a modification thereof be made, the court, to alleviate or correct the situation, has jurisdiction to order that regulations be imposed upon the guardian, such as directing that a relative or other person should have access to the child whose custody is decreed in the guardian.
Id. at 502. Since the guardian in Reynolds did not demonstrate that the trial court had abused its discretion in ordering the guardian to permit the maternal grandparents to visit the minor, the California appellate court affirmed the trial court’s order. Id. at 504.
D. The Probate Court’s Legal Conclusions Were Erroneous
Considering the guardian’s status as an arm of the court, the implications of our supreme court’s decision in the Wat-land case, and the weight of authority from other jurisdictions, we conclude that the probate court has the power to direct a *1062 guardian to permit a grandparent or other person to visit a minor ward when the best interests of the minor will be promoted by such visitation. It follows that the probate court erred in ruling that it lacked such power. The probate court was led into error by its focus on the “rights” of the parties. The probate court’s “rights” analysis was based on two misleading legal propositions. First, because the Florida courts have held various statutes providing for grandparent visitation rights to be unconstitutional, the Grandmother had no “right” to visitation with the Ward. Second, because a guardian of the person of a minor acts in loco parentis, the Guardians of the Person have the exclusive “right” to determine what persons may visit the Ward. We will examine briefly each of these propositions.
E. Review of the Probate Court’s “Rights” Analysis
1. Grandparent Visitation Rights Statutes
The probate court cited the decision in Sullivan v. Sapp, 866 So.2d 28 (Fla.2004), in support of the proposition that the Grandmother did not have “a ‘right’ to grandparent visitation with the [W]ard.” Sullivan is one of a line of Florida cases that have held various legislative efforts to establish “grandparental visitation rights” to be unconstitutional. See, e.g., id. (holding section 61.13(2)(b)(2)(c), Florida Statutes (2001), unconstitutional); Saul v. Brunetti, 753 So.2d 26 (Fla.2000) (holding section 752.01(1)(d), Florida Statutes (1995), unconstitutional); Von Eiff v. Azicri, 720 So.2d 510 (Fla.1998) (declaring section 752.01(l)(a), Florida Statutes (1998), facially unconstitutional); Beagle v. Beagle, 678 So.2d 1271 (Fla.1996) (holding section 752.01(l)(e), Florida Statutes (1993), unconstitutional); Lonon v. Ferrell, 739 So.2d 650 (Fla. 2d DCA 1999) (holding section 752.01(l)(b), Florida Statutes (1997), facially unconstitutional). The grandparental visitation statutes that were invalidated in these and similar cases share the same defect: they intrude upon the fundamental rights of parents to raise their children free of state interference absent a showing of any threatened harm to the child. In the absence of a compelling state interest requiring protection of the child from harm, such statutes run afoul of the parents’ right to privacy guaranteed by article I, section 23, of the Florida Constitution. See Beagle, 678 So.2d at 1276-77.
The probate court’s reliance on Sullivan and similar cases invalidating grandparent visitation statutes was misplaced. Granted, the State cannot compel a parent to permit grandparent visitation absent a showing of threatened harm to the child. But the Grandmother was not asking the probate court to order the parents to permit her to visit the Ward. Instead, she was asking the court to compel the Guardians of the Person to permit such visitation, and they are not the Ward’s parents.
2. The “In Loco Parentis” Argument
 The second proposition is based on the idea that the guardian of the person of a minor acts in loco parentis.[4] The probate court reasoned that since natural parents have the right to decide what persons may visit their child, the child’s guardians, who act in loco parentis, enjoy the same right as the parents. Of course, the guardian of the person of a minor — at least for many purposes' — acts in loco par- *1063 entis. However, there are two important differences between a parent and a guardian or other person acting in loco parentis. First, the parent and child enjoy a natural bond that is absent from the relationship between a person acting in loco parentis and his or her stepchild or ward. Second, the status of a person acting in loco paren-tis is temporary. A person acting in loco parentis may disavow or abandon such status at any time. In the absence of an order for adoption or a judgment terminating a parent’s rights, the parent-child relationship is permanent. See D.L.G. v. M.G. (In the Interest of P.D.), 41 Colo.App. 109, 580 P.2d 886, 837-38 (1978); State v. Bacon, 249 Iowa 1233, 91 N.W.2d 395, 399 (1958).
3. Guardians Do Not Enjoy the Same Rights as Parents.
The two propositions that the trial court relied on in reaching its ruling are based on the same, unstated premise: that the guardian of the person of a minor enjoys the same rights regarding the care and custody of the minor as the natural parents do. A brief review of the case law demonstrates that this premise is mistaken.
The probate court’s reliance on Sullivan and similar cases that have invalidated grandparent visitation statutes assumed that the appointment of the Ward’s maternal grandparents as the guardians of his person transferred to them the parents’ fundamental liberty interest to raise their children free from state interference in the absence of a compelling state interest. But the appointment of the Ward’s maternal grandparents as the guardians of his person did not bestow upon them the constitutional privacy interest that natural parents enjoy regarding the care and custody of their children. See In re M.G., 58 P.3d 1145, 1147 (Colo.App.2002); In re Joshua S., 260 Conn. 182, 796 A.2d 1141, 1155-57 (2002); Casper v. Bushman (In re Guardianship of Wemark), 525 N.W.2d 7, 9 (Iowa App.1994); Luby v. Da Silva (In re Brown), 153 Wash.2d 646, 105 P.3d 991, 994 (2005). Therefore, Sullivan and the other cases that address grandparent visitation statutes are not controlling here. Likewise, a stepparent, custodian, guardian, or other person standing in loco par-entis to a child does not acquire all of the rights or assume all of the obligations of a natural parent. It follows that a guardian of the person of a minor does not have the exclusive right that a natural parent would have to determine what persons may visit the child. See Reynolds, 141 P.2d at 503; Casper, 525 N.W.2d at 9; Luby, 105 P.3d at 994. In this case, the Guardians of the Person enjoy the care and custody of the Ward not because of the natural bond between parent and child but, rather, by virtue of their appointment by the probate court. Because the Guardians of the Person function as an arm of the probate court, they are subject to its supervision and control in the best interests of the Ward concerning what persons may visit him.
F. The Issue of the Ward’s Best Interests
The Grandmother’s petition in this case sought an order directing the Guardians of the Person to permit her to visit her five-year-old grandson. The focus of the probate court’s analysis should have been on whether such visitation was in the Ward’s best interests instead of the respective “rights” of the parties to demand or to withhold visitation. To be sure, the probate court did make a finding that the Guardians of the Person “have not acted unreasonably in limiting the contact of the [WJard with the ... [Gjrandmother.” For two reasons we conclude that this finding *1064 is insufficient to demonstrate that the probate court adequately considered the best interests of the Ward concerning visitation with the Grandmother. First, to the extent that the probate court considered the advisability of visitation between the Ward and the Grandmother, it viewed the question from the perspective of the Guardians of the Person, not based on an independent, objective evaluation of what was in the Ward’s best interests. It is possible that the Guardians of the Person did not act unreasonably in reaching their decision to deny the Grandmother an opportunity to visit with the Ward. Still, a decision that was not unreasonable from their point of view may also have been based on inaccurate information or well-meant advice from others who were not fully informed of all the pertinent circumstances. Second, because the probate court incorrectly ruled that it had no power to interfere with the decision of the Guardians of the Person to deny the Grandmother any visitation with the Ward, we are unable to conclude that the probate court properly considered the Grandmother’s visitation petition based on the best interests of the Ward.
G. The Relief Granted
Accordingly, we reverse the order denying the petition for interim judicial review, and we remand this case to the probate court for reconsideration of the petition in light of this opinion. If the probate court decides to grant the petition on remand, it may order the Guardians of the Person to permit the Grandmother to visit the Ward with such frequency, for such periods of time, and on such other conditions as the probate court in the exercise of its informed discretion may determine will promote the best interests of the Ward. If the probate court decides again to deny the petition on remand, such denial must be made without prejudice for the Grandmother to petition again for visitation with the Ward in the event changed circumstances should warrant.
THE PETITION FOR APPOINTMENT OF A GUARDIAN AD LITEM
The Guardian of the Property did not bring her petition for the appointment of a guardian ad litem for the Ward before the probate court for a ruling until the day scheduled for the evidentiary hearing on the petition for interim judicial review.[5] The appointment of a guardian ad litem for the Ward at that late date would necessarily have required the probate court to continue the evidentiary hearing and to reschedule it for a later date. Assuming that the Guardian of the Property had any standing in the matter, we cannot say that the probate court erred in denying the petition for appointment of a guardian ad litem under the circumstances of this case. See Perlow v. Berg-Perlow, 816 So.2d 210, 216 (Fla. 4th DCA 2002), quashed on other grounds, 875 So.2d 383 (Fla.2004). Accordingly, we affirm the order denying the petition for appointment of a guardian ad litem. However, our review of the record convinces us that the participation of a guardian ad litem for the then five-year-old Ward would probably have been very helpful to the probate court in ascertaining the Ward’s best interests concerning visitation with the Grandmother in this difficult and emotionally charged matter.
Affirmed in part, reversed in part, and remanded.
STRINGER and LaROSE, JJ., Concur.

. After the entry of the order on appeal, the probate court entered an order determining that under section 744.3715(2), the Guardians of the Person were entitled to recover their attorney's fees and costs from the Guardian of the Property and the Grandmother. This order deferred the determination of the amount of attorney’s fees and costs to a later hearing. The probate court subsequently entered an order determining the amount of the attorney’s fees and costs payable by the Guardian of the Property and the Grandmother. Although the parties have briefed and argued the question of whether the Guardians of the Person were entitled to an award of fees and costs under section 744.3715(2), this issue is not before us because no one filed a notice of appeal from either the order determining entitlement to attorney’s fees and costs or the subsequent order determining the amount.

. Although there is no case law construing the statute, section 744.3215(l)(m) suggests that the discretion of a guardian of the person of an adult ward is substantially more limited in this regard.

. The Supreme Court of Florida has referred to the same passage from Blackstone in support of the inherent power of Florida’s circuit courts to protect and provide for children. See Duke v. Duke, 109 Fla. 325, 147 So. 588, 589 (1933). This court has also referred to the inherent power of a court exercising chancery jurisdiction "to control, protect, and provide for infants.” See Cooper v. Cooper, 194 So.2d 278, 281 (Fla. 2d DCA 1967); see also Fisher v. Guidy, 106 Fla. 94, 142 So. 818, 821 (1932). In Florida, as in California, the power and responsibility of a court exercising guardianship jurisdiction over minors is such that the court itself is considered to be the minor’s guardian. See Brown v. Ripley, 119 So.2d 712, 717 (Fla. 1st DCA 1960). Thus "the legal guardian of a minor is regarded as the agent of the court and of the state in the discharge of his duty as such.” Id.

. This Latin phrase translates literally as "in the place of a parent.” It means "[o]f, relating to, or acting as a temporary guardian or caretaker of a child, taking on all or some of the responsibilities of a parent.” Black’s Law Dictionary 803 (8th ed. 2004).

. The Grandmother did not join in the petition for appointment of a guardian ad litem.