CONNER, J.,
concurring specially.
I concur in the result, but disagree that the trial court did not have authority to order counseling for the former wife under the facts of this case. While I agree that it would be best for the legislature to more clearly identify the authority of the court to order counseling for a parent when it appears that, without therapy or counseling, it is unlikely the parent will be able to successfully co-parent because of animosity toward the other parent or other emotional problems, I contend there is existing statutory authority for such action by the trial court. Admittedly, the authority is implicit, rather than explicit. Cf. Gulf Coast Electric Coop., Inc. v. Johnson, 727 So.2d 259, 263 (Fla.1999) (recognizing the Public Service Commission, as a matter of law, had the implicit authority to establish boundaries of service for utilities derived from two separate statutory sections); Witmer v. Dep’t of Bus. & Prof'l Regulation, 662 So.2d 1299, 1301 (Fla. 4th DCA 1995) (recognizing DBPR had “implied authority” to make rules to the extent necessary to implement unrepealed statutes).
I point to three different statutory provisions for such authority: sections 61.001, and 61.13(2) and (3), Florida Statutes (2012).
In section 61.001, the legislature clearly stated:
(1) This chapter shall be liberally construed and applied.
(2) Its purposes are:
(a) To preserve the integrity of marriage and to safeguard meaningful family relationships;
(b) To mitigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage.
(emphasis added). Additionally, in section 61.13(2)(a), the legislature clearly gave the court the power to “approve, grant, or modify a parenting plan.” § 61.13(2)(a), Fla. Stat. (2012). Although section 61.13(2)(b) lists the items which “at a minimum” must be addressed, it does not ap *321 pear the legislature intended that list to be exhaustive, which means, in approving the parenting plan, the court can consider additional requirements.
More importantly, in section 61.13(2)(c), the legislature said “[t]he court shall determine all matters relating to parenting and time-sharing of each minor child of the parties in accordance with the best interests of the child....” § 61.13(2)(e), Fla. Stat. (2012) (emphasis added). The “best interest of the child” theme is repeated in section 61.13(3):
(3) For purposes of establishing or modifying parental responsibility and creating, developing, approving, or modifying a parenting plan ... which governs each parent’s relationship with his or her minor child and the relationship between each parent with regard to his or her minor child, the best interest of the child shall be the primary consideration ... Determination of the best interests of the child shall be made by evaluating all of the factors affecting the welfare and interests of the particular minor child and the circumstances of that family,' including, but not limited to:
(a) The demonstrated capacity and disposition of each parent to facilitate and encourage a close and continuing parent-child relationship, to honor the time-sharing schedule, and to be reasonable when changes are required.
[[Image here]]
(c) The demonstrated capacity and disposition of each parent to determine, consider, and act upon the needs of the child as opposed to the needs and desires of the parent.
[[Image here]]
(f) The mental and physical health of the parents.
[[Image here]]
(r) The capacity and disposition of each parent to protect the child from the ongoing litigation as demonstrated by not discussing the litigation with the child, not sharing documents or electronic media related to the litigation with the child, and refraining from disparaging comments about the other parent to the child.
[[Image here]]
(t) Any other factor that is relevant to the determination of a specific parenting plan, including the time-sharing schedule.
§ 61.13(3), Fla. Stat. (2012) (emphasis added).
In addition to sections 61.001, and 61.13(2), (3), I also submit section 61.122, Florida Statutes (2012), lends support to the notion that the legislature intended for courts to have authority to order parents to attend therapy or counseling when necessary to protect the best interest of children. Section 61.122 governs the liability of psychologists who develop a parenting plan recommendation in dissolution of marriage proceeding. It appears implicit that the legislature envisioned psychologists making recommendations to the court to assist the court in developing parenting plans. It seems equally implicit that psychologists may recommend the need for therapy or counseling to make the parenting plan successful.
Although one would not initially think that participating in mental health therapy or counseling is part of parenting, clearly there are limited instances in which one cannot effectively parent without therapy or counseling. Parenting inherently invokes and requires the ability to put a child’s needs ahead of the parent, including the child’s need to have some emotional bond with both halves of the two biological *322 sources of the child’s being. Thus, there can be very limited instances in which counseling or therapy is a necessary component of parenting.
In all but rare instances, it is not necessary, though perhaps tempting, to order one or both parents to attend counseling when the emotions of animosity flair up during a dissolution proceeding. Thus, it would be rare for a judge to order parents to attend therapy or counseling in constructing an initial parenting plan.' However, when a plan has been approved by the court, and it becomes clear to the court from the evidence that no plan is going to work without one or both parents attending therapy or counseling, I contend the current language in Chapter 61 gives the judge the implicit authority to order therapy or counseling, where it is clearly in the best interest of child in order “to mitigate the potential harm to ... the[ ] children caused by the process of legal dissolution of marriage,” and “to safeguard meaningful family relationships.” § 61.001(2), Fla. Stat. (2012).[1]
Finally, to the extent there is life left in the principle that courts of equity have inherent authority to protect children, I would invoke that principle in this case, based on the particular facts, and affirm the trial court’s authority to order the former wife to attend therapy. “The public policy of this state to protect the interests of children during dissolution' proceedings is so firmly established in our jurisprudence as to require no citation of authority.” Franklin & Criscuolo/Lienor v. Etter, 924 So.2d 947, 949 (Fla. 3d DCA 2006). As early as 1933, our supreme court, in Duke v. Duke, 109 Fla. 325, 147 So. 588, 589 (1933), recognized the longstanding principle that' courts of equity have inherent power to protect infants and said:
One of the most distinctive duties of the court of chancery in England was the protection of the interests of infants. It was said by Blackstone that chancery “is the supreme guardian, and has the superintendent jurisdiction of all the infants in the kingdom.” See, also, Pom-eroy’s Eq. Juris. (4th Ed.) §§ 1304, 1307.
(quoting from the opinion of a commissioner in Fisher v. Guidy, 106 Fla. 94, 142 So. 818 (1932)); accord § 61.011, Fla. Stat. (2012) (proceedings under Chapter 61 are in chancery); Simms v. Dep’t. of Health & Rehab. Servs., 641 So.2d 957, 961 (Fla. 3d DCA 1994); Pollack v. Pollack, 159 Fla. 224, 31 So.2d 253, 254 (1947); K.A.S. v. R.E.T., 914 So.2d 1056, 1061 n. 3 (Fla. 2d DCA 2005); Cooper v. Cooper, 194 So.2d 278, 281 (Fla. 2d DCA 1967). The particular facts of this case demonstrate the very limited situation in which inherent authority of the court to protect children justifies the use of therapy or counseling as a parenting tool.

. The conclusion from the evidence that therapy or counseling is needed does not require expert testimony.