105 P.3d 991 (2005)
153 Wash.2d 646
In the Matter of Sierra Helen BROWN, (d/o/b 11/19/92) child.
Gail M. Luby, Petitioner,
v.
Beth Da Silva and Lisa Sherman, Respondents.
No. 74699-1.
Supreme Court of Washington, En Banc.
February 10, 2005.
Steven Brown, Rachel Pierce, Margaret K. Dore, Law Offices of Margaret K. Dore PS, Seayyle, for Petitioner.
Michael David Hunsinger, Hunsinger & Associates Sutkus & Kestle, Seattle, for Respondents.
Julie Mary Sheridan Herber, Robbins & Herber PS, Everett, Joan Zorza, Washington, DC, Elizabeth J. Kates, Pompano Beach, FL, for Amicus Curiae National Network of Family Law Policy.
Lisa Kay Barton, Issaquah, for Amicus Curiae Northwest Women's Law Center.
*992 C. JOHNSON, J.
This case involves a dispute between two nonparents over custody of a child. Both nonparents filed petitions for custody under chapter 26.10 RCW. Petitioner, Gail Luby (Luby), seeks reversal of the Court of Appeals decision affirming the judgment of the trial court. Luby claims she should be afforded a presumption of fitness and that the trial court erred in applying the statutory standard of best interests of the child under the facts of this case. Luby also challenges the use of reports by parenting evaluators and guardians ad litem, claiming a denial of due process. We affirm the Court of Appeals.

FACTUAL AND PROCEDURAL HISTORY
The central figure of this custody dispute is Sierra Helen Brown (S.H.B.), who was 8 years old at the time the first custody petition was filed in 2000, and is now 12. S.H.B. was born on November 19, 1992, to Rachel Pierce and Steven Brown. Clerk's Papers (CP) at 3-4. Both of S.H.B.'s parents had drug problems and at the age of two, S.H.B. was left in the care of her paternal grandmother, Gail Luby. At the time of trial, S.H.B. lived in Luby's house with Luby, Shamus Luby (one of Luby's sons), and male boarders who rented rooms from Luby. Some of S.H.B.'s care was assumed by Harry Bloss (Bloss), Luby's longtime boyfriend. S.H.B. also had weekly contact with Respondent Beth Da Silva (Da Silva), her maternal grandmother. During the six years S.H.B. lived with Luby, S.H.B. occasionally spent time with Respondent Lisa Sherman (Sherman), the child's second cousin.
Shortly before S.H.B.'s eighth birthday, Luby was arrested for growing a large quantity of marijuana in her home. The police found 33 mature marijuana plants, valued at $66,000, 125 starter plants, cash, and small packaged amounts of marijuana. Resp'ts' Ex. 26, at 4. Luby pleaded guilty to manufacturing an illegal drug and was sentenced to 45 days in jail (30 days served). CP at 167.
This custody dispute arose shortly after Luby's arrest. After a weekend visit with S.H.B., Da Silva dropped S.H.B. off at Luby's house and witnessed several adults smoking marijuana in her living room. Believing that this was not a good home environment for S.H.B., Da Silva took S.H.B. to her home. On December 13, 2000, Luby petitioned in King County Superior Court for a temporary restraining order against Da Silva and Sherman and filed a nonparental custody petition. CP at 2-10. Five months later, Sherman and Da Silva also filed a nonparental custody petition, urging the trial court to grant custody of S.H.B. to Sherman. The trial court consolidated the two petitions. Neither of S.H.B.'s parents petitioned for custody.
The trial court appointed a guardian ad litem and later ordered a parenting evaluation. The parenting evaluator, Dr. Hedrick, concluded that the presence of untreated mental illness and the use of drugs and alcohol in the Luby home were harmful to S.H.B. She was particularly concerned with S.H.B.'s unsupervised contact with Shamus Luby,[1] Bloss,[2] and the male boarders in Luby's house. Dr. Hedrick found the Sherman household, which includes Lisa and Al Sherman and their three sons, by all accounts to be "child centered and committed to parenting." Resp'ts' Ex. 30, at 17. After an initial recommendation to the court that S.H.B. remain with Luby, the guardian ad litem recommended that custody be awarded to Sherman, stating that "several high risk factors are present in Gail's [Luby's] household including lack of supervision or supervision by adults with criminal or chemical dependant histories." CP at 175. Luby did not object to the admission of these reports at trial.
*993 The trial court heard testimony of all parties and 12 witnesses and reviewed over 33 exhibits during an extended trial. On April 29, 2002, the trial court entered its final orders granting custody of S.H.B. to Sherman. The trial court found that, while Luby's marijuana growing operation was troubling, "it is a series of events along with the exercise of poor judgment that governs the outcome of the case." CP at 541. The court concluded that it was in S.H.B.'s best interest to award custody to Sherman because Luby's household constituted a "threat to the child's well-being and continued exposure to the regular use of marijuana and abuse of alcohol is detrimental to the child." CP at 545-46. After the trial court denied Luby's motion for reconsideration, Luby appealed the decision to Division One of the Court of Appeals.
The Court of Appeals affirmed the judgment of the trial court. In re Custody of S.H.B., 118 Wash.App. 71, 74 P.3d 674 (2003). First, the appeals court rejected Luby's argument that by virtue of her claimed status of in loco parentis she be afforded the presumption of parental fitness under RCW 26.10.030. The court reasoned that Luby's status as a person acting in loco parentis did not entitle her to any special rights under chapter 26.10 RCW because the chapter does not provide special status to those acting in loco parentis. Second, the court found that Luby's challenge to the parenting evaluation and guardian ad litem report was untimely because she did not object to the use of the reports at trial. Third, the court found that the issue of S.H.B.'s parents' designating Luby as custodian was not properly before the court because it was not raised at trial. Finally, the court held that the best interest of the child test is constitutional as applied between nonparents. The Court of Appeals upheld the trial court's custody determination, finding substantial evidence to support the trial court's conclusion that awarding custody to Sherman was in S.H.B.'s best interest.

ANALYSIS
Three issues are before us. We are first asked to determine whether a nonparent may stand in loco parentis to a child and be afforded the presumption of fitness in a nonparental custody proceeding under chapter 26.10 RCW.[3] Second, we are asked whether a trial court's use of parenting evaluators and guardians ad litem in a custody determination violates a party's right to due process. Finally, we must determine whether attorney fees and costs should be awarded under RCW 26.10.080.

NONPARENTAL CUSTODY PETITIONS
Luby and Sherman both petitioned for custody of S.H.B. under chapter 26.10 RCW, which governs nonparental actions for child custody. Under RCW 26.10.030(1), a nonparent may petition the court for custody of a child "[o]nly if the child is not in the physical custody of one of its parents or if the petitioner alleges that neither parent is a suitable custodian." In addition, the court may permit the intervention of other interested parties on a showing of good cause. RCW 26.10.030(2). By statute, nonparental custody disputes are to be determined "[i]n accordance with the best interests of the child." RCW 26.10.100.
Luby does not challenge the findings of fact entered by the trial court, but argues that the court erred in applying the best interests of the child standard in making its custody determination, relying on the reasoning of In re Custody of Smith, 137 Wash.2d 1, 20, 969 P.2d 21 (1998), aff'd sub nom., Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Luby contends that since S.H.B. was living with her at the time the petitions were filed, she should be *994 afforded the rights of a parent under the common law doctrine of in loco parentis. According to Luby's reasoning, if she were recognized under this doctrine as the parent of S.H.B., the statutory best interests of the child standard would be unconstitutional under the facts of this case. We reject this argument.
It is difficult to comprehend how Smith would apply here. Smith involved three consolidated cases in which nonparents petitioned for visitation of children in the custody of one of their parents. We found the visitation statutes unconstitutional in cases where the parents are fit, recognizing that parents have a fundamental right to raise their children without state interference. Smith, 137 Wash.2d at 20-21, 969 P.2d 21. Accordingly, the best interest of the child standard is insufficient to overrule a parent's fundamental rights. However, we did not question the application of that standard between parents or between nonparents. Because this case involves nonparents' petitioning for custody of a child, the holdings of Smith are inapplicable.
Luby, a grandmother, attempts to elevate herself to the status of a parent through the doctrine of in loco parentis. Even if we were to recognize that Luby stood in loco parentis to S.H.B., no Washington case recognizes that nonparents are guaranteed the fundamental rights of parents under the doctrine of in loco parentis. Luby cites to In re Marriage of Allen, 28 Wash.App. 637, 626 P.2d 16 (1981), to support her argument. In Allen, a stepmother sought custody of a child in a dissolution proceeding with the biological father. The father argued that the stepmother lacked standing to petition for custody. The Court of Appeals found that former RCW 26.09.180(1)(a)(i) (repealed by Laws of 1987, ch. 460, § 61) was "applicable to cases involving stepparents where the stepparent can meet the requirement of standing in loco parentis ..." Allen, 28 Wash.App. at 644, 626 P.2d 16. Even though the Court of Appeals recognized the stepmother had standing to petition for custody under the doctrine of in loco parentis, the court went on to hold that under the unique facts existing in that case the stepmother had to establish more than the best interest of the child standard in order to prevail. Since the trial court had found that placement of the child with the biological father would detrimentally affect the child's future development, the Court of Appeals affirmed the trial court's placement decision.
The Court of Appeals' decision in Allen is inapplicable to the case before us because Luby is not employing the doctrine of in loco parentis to establish standing to petition under a particular statute. Nonetheless, Luby partners Allen with other cases discussing the doctrine of in loco parentis, extracting language and reasoning to buttress her argument that nonparents derive the fundamental rights of parents through the doctrine of in loco parentis. Luby quotes language from our decision in In re Welfare of Hudson, where we said "[p]arents, or those standing in loco parentis to minor children, primarily have the constitutional right to the custody and control of such minor children ..." 13 Wash.2d 673, 693-94, 126 P.2d 765 (1942). While this quote in isolation appears to support Luby's argument, further examination of Hudson reveals the case is inapplicable to the question presented here. Hudson involved an action between a mother and the juvenile court in which this court held that the juvenile court could not supersede the mother's decision not to amputate her daughter's deformed arm. No party in that case was acting in loco parentis and any discussion of the doctrine is dicta. Luby's contention that the doctrine of in loco parentis extends to nonparent petitioners the constitutionally protected rights of a parent is unavailing. Furthermore, Luby's argument, if accepted, would needlessly cast doubt on the applicability of the best interests of the child standard in nonparental custody actions.
Luby also argues that the Court of Appeals' decision infringes on Rachel Pierce and Steven Brown's fundamental right to make decisions regarding the care, custody, and control of their daughter, S.H.B. Luby contends that the court should defer to the parents' original decision to place S.H.B.'s care in Luby's hands. We are not persuaded by Luby's argument because RCW 26.10.030 is congruent with constitutional rights guaranteed *995 to parents. As the Court of Appeals aptly noted, a trial court is not required to defer to a parent's prior placement decision when determining custody. If a nonparent is petitioning the court for custody of a child in the physical custody of a parent, RCW 26.10.030 requires the court to find that parent unfit before disturbing the custody arrangement. S.H.B. was not in the physical custody of either of her parents when the nonparent parties petitioned for custody. Under the facts of this case, there is no showing that the trial court improperly infringed on the fundamental rights of S.H.B.'s parents.
Both parties petitioning for custody in this case are nonparents, and Luby has not established any basis on which she should be afforded the fundamental right to make childrearing decisions on behalf of S.H.B. While the nonparental custody statute protects relationships children form with third parties, the statute does not distinguish between interested, nonparent parties. We hold that the trial court properly applied the best interests of the child standard under RCW 26.10.100 when making its nonparental custody determination.

PARENTING EVALUATORS AND GUARDIANS AD LITEM
Luby also contends that the trial court's use of parenting evaluators and guardians ad litem violate her right to due process.[4] Particularly, Luby argues that parenting evaluators and guardians ad litem act as de facto trial courts where parties are not afforded the protections inherent in an actual trial. Because participants are not placed under oath during interviews conducted by evaluators, Luby argues, the protections of truthfulness and reliability inherent in trial are not present.
We hold Luby's right to due process was not violated by the trial court's use of Dr. Hedrick's evaluation or the guardian ad litem recommendation.[5] First, Luby received these reports well before the deadline provided by RCW 26.10.130(1), failed to object to the admission of these reports, and was given an opportunity to cross-examine Dr. Hedrick and the guardian ad litem at trial. Second, the trial court did not consider these reports in a vacuum, but as part of an extended trial during which it heard testimony from all the parties and 12 witnesses, and reviewed 33 exhibits. Furthermore, the trial judge specifically explained to the parties the role of the parenting evaluator and the guardian ad litem in her decision, stating:
In questioning Dr. Hedrick yesterday, I want to make sure that absolutely each of you understand in asking those questions, I'm trying to place her opinion in some context. It's simply an expert, and that's her opinion. She is not a fact witness, in this case, simply one person which under the law requires me to consider, but not be bound by. I'm not bound by the G.A.L. recommendation, nor Dr. Hedrick's recommendation. It's simply a recommendation. And only when I hear all the evidence, that then I make a decision.
Verbatim Report of Proceedings (Feb. 7, 2002) at 2-3. In this case, Luby's due process rights were not violated by the trial court's use of the parenting evaluation or the guardian ad litem recommendation.

*996 ATTORNEY FEES
Luby renews her request for attorney fees with this court. RCW 26.10.080 provides that "the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorney's fees in addition to statutory costs." In its determination, the court must balance the needs of the party requesting fees against the other parties' ability to pay. Smith, 137 Wash.2d at 22, 969 P.2d 21.
At trial, Sherman was awarded $1,000 in attorney fees and $500 toward the parenting evaluator's costs. Both parties renewed their requests with the Court of Appeals, which were denied. Luby does not provide any basis on which this court should award her attorney fees beyond averring that Sherman is funding her appeal with a small inheritance gifted to Beth Da Silva. Pet'r's Supp. Br. at 29. We deny her request.

CONCLUSION
We hold that the trial court properly employed the best interests of the child test in determining the placement of S.H.B. in the nonparental custody action under chapter 26.10 RCW. We also hold that Luby's right to due process was not violated by the trial court's consideration of the guardian ad litem recommendation and the parenting evaluator's report along with the other evidence presented at trial. The decision of the Court of Appeals is affirmed.
We concur: ALEXANDER, C.J., MADSEN, SANDERS, BRIDGE, CHAMBERS, OWENS, FAIRHURST, JJ., and IRELAND, J.P.T.
NOTES
[1] Dr. Hedrick spoke with Elicia Luby, Luby's daughter, regarding allegations that she was sexually abused by Shamus Luby and another of her brothers. Dr. Hedrick found the allegations to be credible. Both Dr. Hedrick and the guardian ad litem expressed concern regarding S.H.B.'s unsupervised contact with Shamus.
[2] Bloss has been diagnosed with posttraumatic stress syndrome, which he regularly self-medicates with marijuana. CP at 542. Luby testified at trial that Bloss has violent episodes and is occasionally hospitalized for treatment.
[3] In her supplemental brief submitted to this court, Luby also claims the fundamental rights of a parent should be extended to her because she was a de facto parent to S.H.B. and because she and S.H.B. were part of a "family unit." However, Luby did not raise either of these questions in her petition for review. RAP 13.7(b) provides that "[i]f the Supreme Court accepts review of a Court of Appeals decision, the Supreme Court will review only the questions raised in the ... petition for review and the answer, unless the Supreme Court orders otherwise upon the granting of the motion or petition." Because they are not properly before us, we do not reach these questions.
[4] At the Court of Appeals, Luby did not explicitly aver that the use of parenting evaluations and guardian ad litem reports violated her constitutionally protected right to due process. Rather, she argued that the trial court's reliance on the parenting evaluator caused an improper burden shift. Br. of Appellant at 45-47; In re Custody of S.H.B., 118 Wash.App. 71, 74 P.3d 674 (2003). The Court of Appeals found her argument untimely because it was not raised at the trial court. S.H.B., 118 Wash.App. at 84, 74 P.3d 674.
[5] RCW 26.10.130 provides in part that "the court may order an investigation and report concerning custodian arrangements for the child, or may appoint a guardian ad litem pursuant to RCW 26.12.175, or both." RCW 26.10.130(1). That statute further provides that if the report is furnished to the parties at least 10 days before trial, if the investigator makes the underlying data available to the parties, and if the investigator is available for cross-examination, the report is admissible. RCW 26.10.130(3). The trial court then considers the report and recommendation, along with the parties' comments and criticisms; the court is not bound by the report, but makes its own assessment of the child's best interest. See In re Marriage of Swanson, 88 Wash.App. 128, 138, 944 P.2d 6 (1997).