# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In re the Custody of<br><br>D.R.K.,<br><br>                  Child.<br><br>DARYL FISH,<br><br>                  Respondent,<br><br>         v.<br><br>DANIEL JEREMIAH SIMMS and<br>TRACY MICHELLE SIMMS,<br><br>                  Appellants. | No. 80168-6-I (cons. with No. 80169-4-I, No. 80261-5-I, and No. 80262-3-I)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, C.J. — Daniel Simms appeals a decree granting nonparental custody of his son, D.R.K., to Daryl Fish. Simms, who was incarcerated and appeared by telephone for the trial, raises several claims related to the sufficiency of the evidence and the trial court's treatment of him. Finding no error in the procedure or outcome, we affirm.

I.

Simms is the father of D.R.K., born in 2005. Simms was convicted of first degree robbery and two counts of second degree assault while armed with a

firearm in 2006. He is expected to remain in prison until 2038, well after D.R.K. reaches adulthood.

While incarcerated, Simms has been moved to different prisons several times because of "behavioral issues." In 2014, Simms married Tracy Simms, who he met through a prison pen pal program.[1]

D.R.K. was raised primarily by his mother, who suffered from longstanding substance abuse issues. Thus, D.R.K. spent substantial periods of his childhood in foster care. Even so, D.R.K. and his mother maintained a strong bond. D.R.K. has had limited interaction with Simms consisting of occasional letters, phone calls, and visits to the prison.

D.R.K.'s mother died in 2014, when D.R.K. was nine years old. Tragically, D.R.K. was alone in the house when she died and remained so for several days until he told a neighbor what had happened. After his mother's death, D.R.K. went to live with his maternal grandmother, Sylvia Finne.

Finne asked the members of her church for assistance in caring for D.R.K. Fish, an engineer at Boeing and a deacon at the church, volunteered to help. Fish began helping D.R.K. with his homework, picking him up from school, and taking him places on the weekends, including museums, baseball games, and water parks. Fish also secured a reading tutor for D.R.K., signed him up for swimming lessons, and served as a liaison between D.R.K.'s school and Finne, who did not know how to use a computer.

---

[1] Because Daniel and Tracy Simms share the same last name, we refer to Tracy by her first name for clarity. No disrespect is intended.

In 2016, both Finne and Tracy filed petitions for nonparental custody of D.R.K. Finne's petition proceeded to trial first. Both Finne and Simms were represented by counsel. A court appointed special advocate (CASA) reviewed D.R.K.'s counseling and Child Protective Services (CPS) records and interviewed D.R.K., Finne, Tracy, Fish, and the director of D.R.K.'s afterschool program. According to the CASA's report, D.R.K. would try to hide when Tracy came to pick him up for visits with Simms. D.R.K. also disclosed that Simms got "angry with him" during the visits. After two days of evidence and testimony, a superior court found, based on the evidence, that Simms was incarcerated and "never had any other parental role than having visitation time at the prison." The court awarded custody to Finne. Because of the ruling, Tracy voluntarily dismissed her own petition.

By 2017, Finne was undergoing chemotherapy for cancer, and D.R.K. was spending most of his weekends at Fish's house. Fish took D.R.K. to Oregon to spend Thanksgiving and Christmas with Fish's extended family, and on a trip to Disneyland. Finne gave Fish power of attorney to make medical decisions for D.R.K.

In April 2018, Tracy contacted Finne to set up a visit between D.R.K. and Simms. D.R.K., who had not seen Simms for about two years at this point, became "upset and anxious" at the prospect of a visit, and asked to speak with a counselor. D.R.K. told the counselor that Simms "is scary and gets really mad."

Finne died in May 2018, and D.R.K. began living full-time with Fish. Within a couple of weeks, both Tracy and Fish filed petitions for nonparental

3

custody of D.R.K. Simms joined in Tracy's petition. The parties stipulated to a finding of adequate cause as to both petitions. The trial court did not consolidate the petitions, but decided to hear them together for trial.

The trial court appointed a guardian ad litem (GAL), Christine Wakefield Nichols. Wakefield Nichols interviewed 12 people, including D.R.K., Simms, Tracy, Fish, Simms's correctional officer, members of D.R.K.'s church, and D.R.K.'s counselor. D.R.K. emphatically told Wakefield Nichols that he wanted to live with Fish. He stated that he did not feel like he had much of a relationship with Tracy. Fish told Wakefield Nichols that D.R.K. "burst into tears once worried that he would have to go and live with [Tracy]." Tracy expressed reservations about assuming custody of D.R.K., telling Wakefield Nichols that she was contemplating a divorce from Simms "so I feel as if there isn't much point in moving forward with the custody case."

D.R.K. told Wakefield Nichols he did not want to see Simms, and he did not feel that Simms had his best interests at heart. D.R.K. told Wakefield Nichols he would only be willing to consider phone contact with Simms, but wanted Fish to monitor the conversations.

Trial on the petitions occurred over a two-day period in May 2019, at which point D.R.K. was 13 years old. Simms appeared, pro se, by telephone. Tracy also appeared pro se. She filed two untimely motions to dismiss Fish's petition. The first, entitled "motion to dismiss Daryl Fish's non-parental custody petition for lack of subject matter jurisdiction due to violation of the clean-hands doctrine," asserted that Fish failed to timely notify her and Simms of Finne's

death so that he could gain an advantage in filing a nonparental custody petition, and that this "fraudulent concealment" divested the trial court of jurisdiction. The second, entitled "failure to state a claim upon which relief can be granted," asserted that Fish could not establish the statutory grounds for nonparental custody because Tracy was D.R.K.'s de facto parent. Tracy did not note the motions on the court's calendar, did not serve Fish or Wakefield Nichols with notice of the motions, and did not provide working copies of the motions to the court. In any event, the trial court considered the motions on the first morning of trial, despite the procedural deficiencies, and denied both.

The trial court heard testimony from both Fish and Wakefield Nichols and reviewed 31 exhibits. Tracy did not call any witnesses or offer any evidence other than an undated and unsigned power of attorney in which Simms purported to grant Tracy authority to care for D.R.K. The court offered Simms the opportunity to testify and to call witnesses. Simms told the court he refused to present any evidence or testimony "in protest."

After considering the evidence and testimony, the trial court entered a final order granting Fish's petition for custody of D.R.K. The trial court found that Fish was providing D.R.K. with a stable and dependable home, that D.R.K. was doing very well in Fish's home, and that "it would be a clear detriment to the child if the child does not continue to live" with Fish. The trial court suspended visitation with Simms, ordering that "[a]ll future contact with Mr. Simms should be at [D.R.K.]'s initiation, with input from [D.R.K.]'s counselor or psychologist and

[Fish]." The order specifically outlined how contact would take place if D.R.K. wished it. The trial court denied Tracy's petition. Pro se, Simms appeals.[2]

## II.

First, we note that pro se litigants are held to the same standard as attorneys. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993). To comply with the Rules of Appellate Procedure (RAP), an appellant's brief must contain "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6). Here, Simms makes assertions of facts that are often unsupported by any reference to the record. He quotes caselaw without providing a full or accurate citation. And Simms makes some assertions regarding legal authority that are untrue. With these limitations in mind, as much as possible we address the essence of Simms's claims on appeal.

## A.

Simms first argues that the trial court denied him the right to represent himself at trial. Because Simms was provided a full and fair opportunity to participate in the proceedings, we reject this claim.

As Tracy argued her pretrial motions, Simms often interrupted her to make arguments of his own and raise facts not contained in the motions. Matthew Robinson, one of the attorneys representing Fish, objected to the continued

---

[2] Tracy also appealed the trial court's orders granting Fish's petition and denying her petition. She has not filed a separate opening brief. Both Simms's opening brief and reply brief contain the signature "Tracy Simms," apparently intended to show that Tracy has joined in Simms's brief. But the signatures do not match Tracy Simms's signature on the notice of appeal. The signatures of "Tracy Simms" in Simms's briefs are in Simms's own handwriting. We proceed as though Simms has alone appealed the trial court's orders.

disruptions: "It is not his motion." The trial court told Simms: "Sir, at this point you are a witness. You are not representing yourself." Simms argued: "Yes, I am. I am representing myself, sir. I am the respondent." The court responded: "You are not. You are a witness, sir. Ms. Simms, who I believe you're married to, is the petitioner in this case." Simms stated: "So are you saying that I can't—I can't be—I can't defend myself? Is that what you're saying?" The court informed Simms: "If you are called as a witness, you can tell the Court whatever you want to within the bounds of the rules of evidence. But you are not representing yourself. Ms. Simms is bringing this petition and moving this forward." Robinson stated: "Your Honor, he is the respondent in both cases. He's not the moving party, of course, on the two motions that Mrs. Simms brought, but he is the respondent in on both cases." The court said: "I understand."

As argument proceeded on Tracy's motions, and Simms continued to interject, the court stated: "I think you may have misunderstood what I indicated. Ms. Simms is representing herself. You certainly will have the right to defend in this proceeding, but she is the one making these motions. So at this point, I just need to hear from her and the other attorneys as it relates to the motions." The court informed Simms that he could not participate telephonically if he were disruptive. When Simms continued to interrupt the argument with objections, the court told Simms that Robinson and Tracy could speak about the motions but that "[y]ou are not representing yourself."

After the court denied Tracy's motions, it addressed motions in limine. Simms stated: "I have an oral motion in limine." The court told Simms: "Ms.

7

Simms—this is her action. If she had pretrial motions of some sort, it would be for her to bring them, not you." But the court allowed Simms to argue his motion, which was to exclude admission of the 2016 order granting nonparental custody to Finne.

To the extent that the trial court told Simms "you are not representing yourself," this was error. Simms, as the respondent in both petitions, had the right to defend his interests in the proceeding. But in the context of Tracy's pretrial motion, it appears the purpose of the trial court's statement was to explain to Simms that he had not responded to Tracy's motion and was thus not entitled to interrupt the other parties to argue facts not contained in the motions. Ultimately, Simms was afforded a full opportunity to participate in the proceedings. He argued motions in limine and gave an opening statement. He cross-examined witnesses and objected to questions asked by Robinson. He was given the opportunity to testify and to present evidence, though he expressly declined to do so. And he made a long closing argument. In short, Simms does not show how he was prevented from fully participating in the proceedings.

Moreover, Simms's briefing is inadequate to establish he possesses a constitutional right of self-representation in this context. He argues that the Fifth Amendment to the United States Constitution and article 1, section 22 of the Washington Constitution afford an individual the right to represent themselves "in every criminal and civil proceeding." But the right to self-representation implicitly contained in the Sixth Amendment and explicitly guaranteed in article 1, section 22 relates to criminal prosecutions, not civil proceedings. While this court has

discussed the right to self-representation in some civil contexts, Simms cites no relevant legal authority extending this right to nonparental custody proceedings.[3] He cites a case, without identifying it by name, that he claims establishes this right in the context of a "parental custody deprivation trial." But the text Simms cites belongs to In re Det. of J.S., 138 Wn. App. 882, 159 P.3d 435 (2007), which involved involuntary civil commitment for mental health treatment. Simms fails to establish error.

B.

Simms next contends the trial court erred in failing to grant Tracy's motion to dismiss for lack of subject matter jurisdiction. We conclude Simms fails to establish error.

We review de novo a motion to dismiss pursuant to CR 12(b)(1). Wells Fargo Bank, N.A. v. Dep't of Revenue, 166 Wn. App. 342, 350, 271 P.3d 268 (2012). Subject matter jurisdiction "refers to a court's ability to entertain a type of case." Buecking v. Buecking, 179 Wn.2d 438, 448, 316 P.3d 999 (2013).

Although not entirely clear, Tracy's motion appeared to assert that the trial court lacked jurisdiction because Fish "hid" D.R.K. from her and Simms after Finne's death. She argued that Fish's "fraudulent concealment" of D.R.K. was designed to give him an unfair advantage in filing a nonparental custody petition,

---

[3] See, e.g., In re Det. of J.S., 138 Wn. App. 882, 159 P.3d 435 (2007) (regarding right to self-representation in involuntary civil commitment process); In re Det. of Turay, 139 Wn.2d 379, 986 P.2d 790 (1999) (regarding right to self-representation in sexually violent predator commitment proceeding).

which she contended violated section 8 of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).

Washington has adopted the UCCJEA, codified at chapter 26.27 RCW. The section to which Tracy refers, RCW 26.27.271, provides that Washington should "decline to exercise its jurisdiction" if a "person seeking to invoke its jurisdiction has engaged in unjustifiable conduct." RCW 26.27.201(1). But this section is intended to prevent a party from bringing a child to Washington solely to initiate a child custody proceeding in Washington. It does not divest Washington of jurisdiction when, as here, Washington is undisputedly the child's home state. Even if Tracy's allegations were true, she does not show they would establish a basis to dismiss Fish's petition.[4]

C.

Simms also contends that the trial court erred in denying Tracy's motion to dismiss for failure to state a claim because she was D.R.K.'s de facto parent. Again, Tracy's motion lacked merit and the trial court did not err in denying it.

This court reviews de novo a trial court's ruling on a CR 12(b)(6) motion to dismiss. Berst v. Snohomish County, 114 Wn. App. 245, 251, 57 P.3d 245 (2002). "Courts should dismiss under this rule only when it appears beyond a reasonable doubt that no facts justifying recovery exist." Berst, 114 Wn. App. at 251.

---

[4] On appeal, Simms asserts other grounds allegedly depriving the trial court of jurisdiction, including (1) that Fish was statutorily obligated to contact the Division of Children, Youth and Families so that they could provide services to reunify him and Tracy with D.R.K. under RCW 13.32A.082; and (2) that Fish's petition violated his rights to equal protection under the law. But we do not consider issues and theories not presented to the trial court. RAP 2.5(a); Hanson v. City of Snohomish, 121 Wn.2d 552, 557, 852 P.2d 295 (1993).

To demonstrate de facto parentage, a party must establish the following criteria:

> (1) the natural or legal parent consented to and fostered the parent-like relationship, (2) the petitioner and the child lived together in the same household, (3) the petitioner assumed obligations of parenthood without expectation of financial compensation, and (4) the petitioner has been in a parental role for a length of time sufficient to have established with the child a bonded, dependent relationship, parental in nature.

In re Parentage of L.B., 155 Wn.2d 679, 708, 122 P.3d 161 (2005). De facto parentage is "limited to those adults who have fully and completely undertaken a permanent, unequivocal, committed, and responsible parental role in the child's life." L.B., 155 Wn.2d at 708.

Tracy's motion failed to establish that she was D.R.K.'s de facto parent. Most notably, Tracy did not even assert, much less establish, that she and D.R.K. had ever lived together in the same household.[5] Nor did she establish that she and D.R.K. had a bonded, parental relationship. But even if Tracy had established de facto parentage, Simms does not articulate why this would have been a basis to dismiss Fish's petition. See, e.g., In re Parentage of J.A.B., 146 Wn. App. 417, 426, 191 P.3d 71 (2008) ("[t]he nonparent custody statute and the de facto parent doctrine have very different purposes"); In re Custody of J.E., 189 Wn. App. 175, 192, 356 P.3d 233 (2015) ("different legal rights attach to a determination of de facto parentage than a grant of nonparental custody"). The

---

[5] For the first time on appeal, Simms contends that Tracy and D.R.K. "lived in the same household on a number of occasions," including "staying in a rustic cabin on the peninsula" while visiting Simms in prison. But in determining whether the trial court erred, we may consider only the facts and evidence presented to the trial court.

trial court did not err in denying Tracy's motion to dismiss for failure to state a claim.

D.

Simms next contends that the evidence was insufficient to establish that D.R.K. would suffer "actual detriment" in Tracy's custody. But the trial court did not have to make such a finding.

RCW 26.10.030(1) provides that a party may file a nonparental custody petition "if the child is not in the physical custody of one of its parents or if the petitioner alleges that neither parent is a suitable custodian." The court must make a threshold determination that the petition and supporting affidavits establish adequate cause for a hearing. RCW 26.10.032. Once the initial threshold is met, a nonparent seeking custody must establish, by clear, cogent, and convincing evidence either the parent is unfit or that placing the child with the parent would lead to "actual detriment to a child's growth and development." In re Custody of L.M.S., 187 Wn.2d 567, 576, 387 P.3d 707 (2017) (quoting In re Custody of E.A.T.W., 168 Wn.2d 335, 338, 227 P.3d 1284 (2010)). However, where the child does not reside with either parent and the custody dispute is between two nonparents, courts are to determine nonparent custody by applying the "best interests of the child" standard. In re Custody of Brown, 153 Wn.2d 646, 654, 105 P.3d 991 (2005); RCW 26.10.100.

The actual detriment finding applies only to placement with a parent. Because Tracy is not D.R.K.'s parent, the trial court was not required to make

12

such a finding with regard to her.[6] Instead, the trial court was required only to find that it was in D.R.K.'s best interests to continue residing with Fish. Simms does not challenge this finding and it is a verity on appeal. See In re Welfare of A.W., 182 Wn.2d 689, 711, 344 P.3d 1186 (2015) (unchallenged findings of fact are verities on appeal).

E.

Simms next contends that the trial court deprived him of equal protection by refusing to give any weight to the various crimes Simms alleged that Fish committed. But Simms provides only conclusory arguments related to this issue. He does not identify similarly situated classes or individuals or cite equal protection cases to support his argument. "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." Holland v. City of Tacoma, 90 Wn. App. 533, 538, 954 P.2d 290 (1998).

F.

Simms next argues that the trial court unfairly restricted his cross-examination of witnesses. We review a trial court's ruling on the scope of cross-examination for an abuse of discretion. State v. Blair, 3 Wn. App. 2d 343, 350, 415 P.3d 1232 (2018). A court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds for untenable reasons. Blair, 3 Wn. App. 2d at 350.

---

[6] Simms appears to argue the power of attorney he signed entitles Tracy to stand in loco parentis and thus presumably, to be treated as a parent for the nonparental custody statute. But "no Washington case recognizes that nonparents are guaranteed the fundamental rights of parents under the doctrine of in loco parentis." In re Custody of Brown, 153 Wn.2d 646, 652, 105 P.3d 991 (2005).

Although Simms argues that the trial court "stopped every line of questioning of adverse witnesses to establish relevant facts," he cites to only two portions of the record in which he claims his cross-examination was limited. The first time, Simms attempted to cross-examine Fish about an unadmitted exhibit. The second time, Simms began arguing with Fish that taking D.R.K. to Oregon to visit family constituted a felony. But the "right to cross-examine witnesses is not absolute" and is "limited by general considerations of relevance." State v. Darden, 145 Wn.2d 612, 620-21, 41 P.3d 1189 (2002). Only evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is relevant. ER 401. Simms fails to establish the relevance of either line of questioning to the ultimate issue before it. The trial court did not abuse its discretion.

G.

Simms argues that the trial court failed to recognize that incarcerated persons maintain a liberty interest in the care and custody of their children. But Simms does not identify or assign error to any ruling by the trial court related to his liberty interest. The court was required to determine whether Simms was unfit or placement of D.R.K. with Simms would be detrimental. Because Simms will be incarcerated until D.R.K.'s adulthood, he is unavailable to parent D.R.K. Simms does not challenge this finding. Instead, Simms appears to argue that the trial court should have deferred to his preference that D.R.K. be placed in Tracy's

14

custody.[7]  But, as discussed above, the issue before the court was to determine whether placement with either Fish or Tracy was appropriate and in the best interests of D.R.K.  D.R.K. was happy and comfortable in the care of Fish, who had served in a parental role for several years and provided daily care for him. He did not know Tracy well and expressed extreme despair at the prospect of living with her.  Substantial evidence supported the court's finding that it was in D.R.K.'s best interests to be placed with Fish.

### H.

Finally, Simms contends that the trial court erred in restricting his right to visitation with D.R.K.  The unchallenged findings support the trial court's order limiting visitation.

When, as here, the trial court has weighed the evidence, our review is limited to determining whether substantial evidence supports the court's findings of fact and whether those findings support the court's conclusions of law.  In re Dependency of P.D., 58 Wn. App. 18, 25, 792 P.2d 159 (1990).  We defer to the trier of fact on issues of conflicting testimony, credibility of the witnesses, and the persuasiveness of the evidence.  State v. Killingsworth, 166 Wn. App. 283, 287, 269 P.3d 1064 (2012).  Such deference is particularly important in proceedings affecting the parent and child relationship because of "the trial judge's advantage in having the witnesses before him or her."  A.W., 182 Wn.2d at 711.

---

[7] Simms also argues that RCW 13.34.020 requires that the trial court maintain a child within its "family unit."  But chapter RCW 13.34 governs dependency proceedings and Simms does not establish its relevance here.

RCW 26.10.160(2)(m)(i) provides that a court may limit a parent's visitation that are:

> reasonably calculated to protect the child from the physical, sexual, or emotional abuse or harm that could result if the child has contact with the parent requesting visitation. If the court expressly finds based on the evidence that limitations on visitation with the child will not adequately protect the child from the harm or abuse that could result if the child has contact with the parent requesting visitation, the court shall restrain the person seeking visitation from all contact with the child.

Simms does not identify any specific restriction that he believes is unreasonable or contrary to law. And the trial court's unchallenged findings of fact establish that requiring D.R.K. to visit his father in prison "would be detrimental to [D.R.K.]'s growth and development." The trial court found that D.R.K. reported that Simms was "scary and gets really mad." D.R.K. told many people that he did not want to have contact with Simms. In fact, D.R.K. found visits with his father so distressing he asked to talk to a counselor.

According to D.R.K.'s counselor, D.R.K. had symptoms "consistent with a PTSD diagnosis" and that "contact with his father is a trigger for [D.R.K.]'s PTSD responses hindering his brain development and healing." The trial court also found that Wakefield Nichols concurred with the counselor's recommendation, believing that "requiring [D.R.K.] to have contact with his father may further harm [D.R.K.]'s health and well-being by undermining the child's sense of self identity." Although Simms is dissatisfied with these findings, he does not challenge their factual basis. We do not find any error in the trial court's order on visitation.

Simms requests an award of costs associated with this appeal. But RAP 14.2 provides that this court will award costs to the party that "substantially prevails on review." Because Simms is not the prevailing party, he is not entitled to costs.

Affirmed.

_____
Mann, C.J.

WE CONCUR:

_____        _____
                                 Appelwick, J.